This action was prosecuted to recover from the defendants, certain moneys claimed to be due from them to the plaintiffs, as wharfage or slippage, in respect to a certain ship called the Joseph Walker; or the damages which the plaintiffs claimed they had sustained, by the loss of such wharfage or slippage, by reason of the wrongful and negligent acts of the defendants, and their agents and employees.
The ship Joseph Walker of about 1300 tons burden, while lying on the west side of the pier No. 29, East river, at the port of New York, taking in cargo, took fire on the 26th of December, 1853, and sunk to the bottom of the river, in about thirty feet of water. She had on board about 300 or 400 barrels of resin, about 300 bales of cotton, about 20,000 bushels of wheat; all of which were submerged. The defendants, the Atlantic Mutual Insurance company, were insurers of 13-32 parts of the ship. Other insurance companies, who are also parties defendant, were insurers of the interests of other owners — only 6-32 parts being uninsured, and the owners of those parts are also defendants. The *Page 276 
sunken wreck was not removed from the slip until the 25th or 26th of October, 1855.
The insured owners of the vessel abandoned her, after she was burned and sunk, as a total loss, and the insurance companies accepted the abandonment.
The plaintiff Moses Taylor, as lessee of the corporation of New York, was entitled to demand and receive the wharfage of the bulkhead on the easterly half of the slip, and to the wharfage or slippage arising from the westerly half of the pier.
When this case was first before the Superior Court of New York for consideration upon a demurrer to the complaint, that court held that the plaintiffs could not recover without showing that the defendants, by due care and attention, could have removed the wreck, or at least have shifted its position so as to prevent its being a cause of injury, and by showing that they were in default for not doing so.
That court also held that the defendants, having insured an individual interest in the ship, and having accepted an abandonment made by such insured owner after the vessel was so burned and sunk, were not liable for loss of slippage or wharfage caused by such obstruction, it not being alleged that by due care and attention it could have been removed.
And also held, that such piers and bulkheads are open to the common use of the public for any purposes connected with the loading, unloading, or repairing of vessels, and securing their cargoes, whether in vessels afloat or sunk, not prohibited by statute or the lawful ordinances of the common council; and that such use, when it neither incumbers the bulkhead or pier so as to incommode the loading or unloading of vessels, or the passing or repassing of carts, nor in any way injures the structure itself, gives no right of action to the party entitled to slippage or wharfage.
Held, also, that a use of a ship, in attempting to raise a vessel and secure the property in it, especially as such attempt was made at the request of the plaintiffs, created no liability to make compensation for such use, as no facts were stated showing such use to be wrongful, or an invasion of the plaintiffs' rights, or a violation of any duty which the defendants *Page 277 
owed to them. The demurrer to the complaint was sustained, and judgment given for the defendants, with leave to plaintiffs to amend. (2 Bosw. 106.) The complaint was amended, and, as thus amended, did allege: "That the said (wreck) ship Joseph Walker could have been removed with reasonable care, skill and diligence in a short space of time — to wit, in the space of sixty days from the time when so sunk. That the defendants having control and possession of the said ship, have conducted themselves so negligently, unskillfully and carelessly in and about their attempts at the removal of said ship, which they undertook to do, and as was their duty to do; and in and about the bringing into said slip and sinking or suffering to be sunk and left there, the said other vessels or hulks, and in various other acts of negligence, unskillfulness and carelessness in respect thereto, that the plaintiffs have suffered great and lasting injury." That, "by means of all which premises, and by the said several acts of negligence and unskillfulness, and by said other obstructions, brought into said slip by the defendants, and left there, and by injury to the said wharf and pier as aforesaid, and by the said piles driven and left remaining in the said slip as aforesaid, and by said obstructions to the passing and repassing of carts upon and over said pier and wharf as aforesaid, and by preventing the entering and loading and unloading of vessels into and alongside of said ship, pier and wharf, and by their unnecessary use and occupation of said premises as aforesaid, the said pier, wharf, slip or basin has been greatly interfered with, and the plaintiffs greatly damaged."
On the second trial upon this amended complaint, the plaintiffs adduced their testimony and rested. And it was admitted that the fire in the Joseph Walker was accidental; that it did not originate on board, and that the proprietors were not in fault in regard to the fire. The counsel for the defendants asked the court to charge the jury to find a verdict for the defendants, on the ground,
1. That the wharfage was proved to have been paid by the owners up to December 27, 1854, when the vessel was *Page 278 
sunk, and the obligation to pay wharfage after that ceased when she ceased to be a floating ship, without the fault of the proprietor, by an accident, which as to the owner was a destruction of his property; that common loss and calamity were so far shared by the pier owners.
2. That in no view that could be taken of an express or implied contract, was there any ground for implying a contract to pay wharfage by the abandonment of a ship sunk to the bottom, and which could not be removed by any of the ordinary appliances belonging to a ship.
3. As to the idea of obstructing wharfage, it was decided in this case that, under the circumstances of this very accident, no wharfage could be claimed for the materials that were necessary for relieving the pier and slips from the obstructions that had sunk there.
4. That, the vessel being sunk in public waters, it was the duty of the plaintiffs or of the city authorities to remove the obstruction. The city made the plaintiffs grantees of the tolls, and it was the duty of the plaintiffs to remove the obstructions, in consideration of being entitled to such tolls; and they could make no claim upon any one for the continuance of that obstruction which it was their duty, as receivers of the wharfage and tolls, to remove.
5. It was the duty of those having the tolls to clear the obstruction, and then, if any one was in fault, to throw the expenses upon them.
6. The insurers by abandonment do not acquire an actual movable possession; they are not the parties in actual possession, and are not chargeable with the removal of the ships; they were merely owners of what should be saved.
7. Further, if there was an obligation on the owners to remove the vessels, there could be no other obligation than to use reasonable diligence for such removal, and the defendants could not be liable, inasmuch as the evidence was undisputed that they had used due diligence.
8. The sunken ship was an obstruction to public waters, without any fault of defendants, or original liability against them, and the engagement of salvors as contractors, having *Page 279 
possession and conducting the work, did not render them servants of the insurers, or them responsible for their acts.
The counsel for the plaintiffs contended that the defendants had accepted the abandonment and considered the wreck of value, and made a contract looking to recover something from the proceeds. That by this act of theirs and the transfer to them, they became owners. That the wreck was regarded as removable, and the defendants, if they chose to bring vessels and the like there in getting it out, should pay wharfage.
The court charged the jury that, upon the evidence adduced by the plaintiffs, as matter of law, the defendants were entitled to their verdict. To this direction, that the jury should find for the defendants, the plaintiffs' counsel excepted. The plaintiffs' counsel demanded to go to the jury. This was denied and the plaintiffs excepted. The jury then found a verdict for the defendants, and judgment thereon was affirmed at the General Term of the Superior Court of New York, and the plaintiffs now appeal to this court.
It will be convenient to consider, in the first place, the ground of recovery, and the only ground upon which the plaintiffs claimed at the trial he was entitled to recover, viz.: that under the circumstances detailed the defendants were liable to pay wharfage. The plaintiffs claimed that they were entitled to the wharfage to the bulkhead or wharf forming the extremity or water side of South street, between Piers Nos. 28 and 29 on the East river; and were also entitled to the wharfage of the westerly half of Pier No. 29. Such rights could only have been acquired by leases or grants made by the mayor, aldermen and commonalty of the city of New York, and such a lease had been so granted to plaintiffs. The corporation of the city of New York were originally the owners of the land, between high and low water mark on the East river, and four hundred feet beyond low water mark extending into said river. At an early day the said corporation commenced making grants of said lands to the owners or proprietors of the adjacent upland, extending the streets through the same, and requiring the persons taking out said grants to *Page 280 
fill in the intermediate spaces between said streets, and to construct and maintain the same. By section two hundred and twenty of chapter eighty-six, of the Revised Laws of 1813, it was enacted that it should be lawful for the said the mayor, aldermen and commonalty, to lay out, according to the plan agreed upon for that purpose, regular streets and wharves, of the width of seventy feet in front of those parts of the said city which adjoin to the East river or Sound, and to the North or Hudson river, and to such an extent along those rivers respectively as they might think proper, and they had power to lengthen and extend, from time to time, said streets or wharves. Section two hundred and twenty-one declares that the said streets or wharves shall be made and completed according to said plan, by and at the expense of the proprietors of lands adjoining, or nearest and opposite to the said street or wharves, to the breadth of their several lots, and said respective proprietors were to fill up and level, at their own expense, according to such plan, the spaces lying between their said several lots and the said streets and wharves, and should, upon so filling up and leveling the same, be entitled, respectively, to become the owners of the said intermediate spaces of ground in fee simple. In pursuance of these provisions, South street, the exterior street on the East river, was made and constructed of the width of seventy feet, by the plaintiffs or their grantors.
The two hundred and twenty-fourth section of this act authorizes the corporation to direct piers to be sunk and completed at such distances and in such manner as it may think proper in front of said streets or wharves, so adjoining and extending along the said rivers, and the said piers to be connected with the said streets or wharves by bridges, at the expense of the said proprietors, and if they should neglect or refuse to make the same, according to such directions, then it was made lawful for the said corporation to sink and make said piers and bridges at its own expense, and to receive to its own use wharfage for all vessels that might at any time tie or be fastened to said piers or bridges, which they might make. Or it might be lawful for the said corporation *Page 281 
to grant the right of making such piers and bridges, and the right of receiving the profits thereof. The two hundred and thirty-third, two hundred and thirty-fourth and two hundred and thirty-fifth sections of said act contain prohibitions upon all persons throwing or placing any obstructions in any dock or upon any wharf in said city, and impose penalties therefor; and section two hundred and thirty-six declares that it may be lawful for the said corporation to make such by-laws and ordinances as they should from time to time think proper for regulating the wharves, piers and slips in said city. We thus see that, by these provisions of the statute, the wharves on that side are exterior streets of the city fronting and adjoining the East or North river; that the piers are projections extending from said wharves out and into said rivers; and that the spaces lying between said piers are called and known as slips.
The section two hundred and twelve of this act fixes the rate of wharfage for all ships and vessels using the wharves in said city, to be charged and received by the owners thereof respectively; the rates therein specified to be paid "for every day such ship or vessel shall use or be made fast to any of the said wharves." And section two hundred and fifteen declares, that every ship or other vessel which shall make fast to any other ship or vessel that shall be fastened to any wharf, and being so fastened shall load, unload or careen, shall pay the one-half of the rate of wharfage such ship or vessel would have been liable to pay if fastened to such wharf, and then loaded, unloaded or careened. And section two hundred and sixteen declares that the master or owner of any ship or other vessel, or, in their absence, the factor or agent to whom such ship or vessel shall be consigned, shall be liable to pay the wharfage due for such ship or vessel. Provided, however, that such factor or agent shall not be liable for the same, unless an account of the wharfage due shall be delivered to such factor or agent, or, if absent, left at his usual place of abode, and the money there demanded before the departure of such ship or vessel from the port. *Page 282 
It is therefore very clear, from these provisions of the statutes, that wharfage is only demandable for the use of the wharf or pier, and the statutes define in what that use is to consist, or, rather, what is the evidence of such use. It is, that the ship or vessel should be made fast to such wharf or pier, or made fast to any other ship or vessel which shall itself be fastened to any wharf or pier. The statutes do not require the payment of wharfage by any ship or vessel unless such ship or vessel is made fast to some wharf or pier, or is fastened to another ship or vessel which is already made fast to any such wharf or pier.
This construction is confirmed by the act of 1860 (chap. 254 of Laws of 1860), the first section of which act declares that it shall be lawful to charge and receive wharfage or dockage at the following rates: "For every vessel that uses or makes fast to any pier, wharf or bulkhead within the cities of New York or Brooklyn, for every day or part of a day's use of the same, viz., from every vessel of two hundred tons burden or under, one cent per ton, and for every vessel over two hundred tons one cent per ton, for each of the first two hundred tons and for every additional ton burden one-fourth of one per cent per ton; and from every vessel making fast to another vessel lying at any pier, wharf or bulkhead, and for every vessel lying at anchor within any slip or basin, one-half of the above rates." The Joseph Walker, after December 27, 1854, up to which time the accustomed wharfage was paid, did not, after that date, make use of the plaintiffs' wharf or pier, or make fast to any such wharf or pier; nor was it made fast to any other vessel or ship, which was fastened to such wharf or pier. The plaintiffs, therefore, had no legal claim for wharfage in respect to said vessel after her partial destruction by fire and sinking in thirty feet of water on the night of December 26, 1854. As this was the only claim the plaintiffs made at the conclusion of the trial, and as the statutes of the State did not authorize them to demand and receive wharfage in respect to a ship sunk thirty feet under water, the judge rightfully decided that the plaintiffs were not entitled to *Page 283 
receive such wharfage and properly directed the jury to find a verdict for the defendants.
We do not think the exception taken to the refusal of the judges to the demand of the plaintiff's counsel to go to the jury, is available on this appeal. If such demand is to be understood to mean that the plaintiffs demanded to go to the jury on the question as to their right to recover wharfage, then it was properly refused, as such right was, upon the conceded facts, a question of law solely, and as it has been shown, was properly decided adverse to the plaintiffs, by the judges at the trial. If, however, the plaintiff's counsel desired to go to the jury on other questions, it was incumbent on him to point out specifically the particular questions he desired to be submitted to the jury. This point was distinctly ruled in Winchell v.Hicks (18 N.Y. 558), and the doctrine of that case has received the frequent approval of this court. If the plaintiffs had desired any questions of fact to be submitted to the jury, they should have distinctly stated them, and made their requests accordingly, and, if refused, taken an exception.
There is certainly no ground of liability on the part of the defendants to compensate the plaintiffs for the use of the wharf or pier, in going to and coming from the wreck, or the vessels afloat on the waters of the East river employed in raising it. These waters are part of the arm of the sea, and are a public highway and navigable to all. The plaintiffs have no right to claim compensation for their use. The act of 1860, already quoted, was the first authority given by the State to the owners of the adjacent wharves or bulkheads and piers, to charge for any vessel lying at anchor within any slip or basin, any wharfage whatever for the use of the waters of such slip or basin, and then only half the usual wharfage. The plaintiff can claim nothing by virtue of this act, as it was not in force until years after the removal of the wreck of this vessel.
Equally untenable is the claim that the plaintiffs are entitled to compensation from the defendants, for the use by their agents and servants in passing and repassing over the *Page 284 
wharf and pier of the plaintiffs, in going to and coming from the wreck of said ship, and the vessels employed in raising her. These wharves and piers are streets of the city of New York, for the free passage of all citizens, and are so declared by statute. The only revenues authorized to be derived therefrom are the wharfage, already referred to, and the charge authorized to be made by the third section of the act of 1860, already adverted to. This section makes it lawful for the owner or lessee of any bulkhead, pier or basin in the port of New York, to charge and receive the sum of five cents per ton on all goods, wares or merchandise, remaining on the bulkhead or pier, owned or leased by him, for every day after the expiration of forty-eight hours from the time such goods, etc., shall have been left, or deposited on such pier or bulkhead. Obviously this section furnishes no ground of liability on the part of these defendants, even if it had been in existence at the time of the happening of this accident. It is now contended that these defendants were in fault in respect to the sinking of the Joseph Walker, and the main ground upon which it is now argued that they are liable to the plaintiff is, that they so negligently, carelessly and unskillfully managed the raising of said wreck and the removal thereof, that the plaintiffs sustained great damage thereby.
A conclusive answer to this position is, that the plaintiffs did not request any such question to be submitted to the jury, and to be passed upon by them. But upon the evidence adduced in this trial the jury would not have been warranted in finding that the defendants had carelessly, unskillfully or negligently managed the raising and removal of said wreck, or that they had unreasonably delayed the same.
The place where said wreck was sunk was a part of an arm of the sea, and embraced a portion of the navigable waters of the State. It may be very doubtful whether the defendants were under any obligation to remove said wreck. The current of authority would seem to show that they were not. Thus in King v. Watts (2 Esp. 675) it was held that *Page 285 
from an unavoidable accident producing the wreck of a vessel, no duty arises to the owner to take any precautions, or to remove the impediments to the navigation which were created, and there was no reason for throwing upon the owner any special care in consequence of what may be considered as a misfortune both to him and to the public. In Brown v. Mallett (5 M.G. Scott, 613), MAULE, J., in his elaborate opinion, says, that "it is the duty of a person using a navigable river with a vessel of which he is possessed and has the control and management, to use reasonable skill and care to prevent mischief to others." And he adds: "His liability is the same whether his vessel be in motion or stationary, floating or aground, under water or above it, for in all these cases" he says "the vessel may continue to be in his possession and under his control and management."
Baron ALDERSON, in his judgment in White v. Crisp (26 Eng. Law Eq. 532), referring to these observations of Justice MAULE, remarks: "This duty arises out of the possession and control of the vessel being in him, and it is clearly also laid down in the same judgment that this liability may be enforced with the transfer of the possession and control to another person; and further, on the abandonment of such possession, control and management, the liability ceases." He further says: "If we apply these principles to this declaration we find a distinct averment that up to and at the time of the injury to the plaintiffs' vessel, the defendants, to whom the sunken ship had been transferred, exercised the possession, control, management and direction thereof. Now, we understand by this, that the defendants had it in their power, by due care and exertion, to have altogether removed this vessel, or to have shifted at least its position, and so might reasonably have been able to have prevented the injury. It is clear that either the original owner or transferee of the wreck may abandon it, and so put an end to his liability." The head note to this case states accurately the principle decided: "The owner of a vessel which has been sunk in a navigable river is bound to use proper care to prevent accidents to other vessels so *Page 286 
long as he has the possession, control and management of the vessel, that is, so long as by due care and exertion he can either remove the vessel or so far shift its position as to prevent such injury. This duty attaches to the ownership for the time being, and will be transferred to the purchaser of the sunken vessel, and it makes no difference that the vessel lies in a part of the channel not ordinarily used for navigation; but the duty ceases on the abandonment of the possession of the vessel." If these views are sound, and it is believed that they are eminently so, it is not perceived that in any aspect in which the facts developed on this trial are regarded, can these defendants be held to any liability to these plaintiffs, in respect to any of the matters set forth in the complaint in this action.
The judgment of the Superior Court of New York was correct, and should be affirmed, with costs.
All the judges concurring,
Judgment affirmed. *Page 287