**THAMES TOWBOAT CO. v. FIELDS et al.**

(District Court, S. D. New York. October 31, 1922.)

1. **Navigable waters** ⬅⟐24—**Owner of abandoned wreck not liable for collisions.**

By the maritime law the owner of a vessel which is sunk, who does not intend to raise her, and who does not raise her, is not responsible for damage caused to other vessels as a result of running into her, and the law is not changed by Act March 3, 1899, §§ 15, 19 (Comp. St. §§ 9920, 9924).

⟐⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**2. Navigable waters ⊜⇒24—Failure to remove sunken vessel proof of abandonment.**

Failure of the owner to remove a sunken vessel within 60 days *held* proof of her abandonment.

**3. Navigable waters ⊜⇒24—Director General held liable for failure to mark wreck.**

The Director General of Railroads, who undertook to mark the position of a sunken vessel in a harbor, *held* liable for injury to another vessel, which ran into the wreck because of insufficient marking.

In Admiralty. Suit by the Thames Towboat Company against James Fields, with the Director General of Railroads impleaded. Decree for libelant against the Director General.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for libelant.

Macklin, Brown, Purdy & Van Wyck, of New York City (Horace L. Cheney, of New York City, of counsel), for Director General.

Leo J. Curren, of New York City, for James Fields.

WARD, Circuit Judge. [1, 2] I may as well decide this case now, as my convictions are very positive. On the first point, as to the abandonment of the wreck, I think by the maritime law the owner of a vessel which is sunk, who does not intend to raise her, and who does not raise her, is not responsible for any damage caused to other vessels as a result of running into her. That law has not been changed by this statute of March 3, 1899 (30 Stat. 1148). It does not require notice of abandonment and one section provides that the fact of the owner's not removing it within 30 days shall be taken to establish abandonment. In the 60 days that passed here, nothing was done by the owner. In my opinion, abandonment is absolutely proved, and the libel against Mr. Fields must be dismissed, with costs.

When it comes to the other point, there is more difficulty; but I regard the Director General as operating, not only the wharves which are called the Port Reading Company's wharves, but also the Creosote wharf, which is jointly owned by the Reading Railroad Company and the Central Railroad of New Jersey. It was all one concern. I think that, when the tug went in there, consigned to the Port Reading Company, for the purpose of getting a load of coal, it was rightfully there. If it should not have gone to the Creosote wharf without direction from the Port Reading Company, that did not make it an outlaw, but only allowed the Port Reading Company to say, "Move away and go down to the light stakes."

[3] When it comes to the marking of the wreck, the conduct of the Director General shows that he appreciated that it was a dangerous obstruction to vessels coming in and going out of these waters, and that he ought to warn them, and he did so. In point of fact the testimony was that Mr. Fields' captain says that he went down to mark that wreck, while Fields was determining whether he would remove it or not. But the foreman said he would attend to it, and Beddall, the carpenter, was ordered by him to mark it. So that the Director General undertook to do this very thing that was done. One witness says that

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

there was a pole left sticking out of the coal on the day of the accident. I have very grave doubt about that. I think that, in view of the fact that so many men on the deck of the tug did not see it, it is very unlikely that it was there; but, if it was there, in my judgment it was an insufficient marking. The Director General showed that he thought it was necessary to have better marking than one stick coming out of the coal, because he anchored a dory there, with two red flags by day and at night hung out lights.

I think the Director General is liable, and that the tug Gertrude was not at fault. Therefore there may be a decree in favor of the libelant against the Director General, with costs, and the libel against Fields may be dismissed, with costs.