Madeleine **WHEELDON**, Plaintiff,

v.

**UNITED STATES of America**, Defendant.

Civ. No. 37973.

United States District Court
N. D. California, S. D.

April 4, 1960.

---

Hall, Henry, Oliver & McReavy, W. Martin Tellegen, San Francisco, Cal., for plaintiff.

Lynn J. Gillard, U. S. Atty., Keith R. Ferguson, Sp. Asst. to Atty. Gen., Graydon S. Staring, Attorney, Admiralty and Shipping Section, Department of Justice, San Francisco, Cal., for defendant.

GOODMAN, Chief Judge.

This is an action brought under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671 et seq., to recover for property damage suffered when on March 2, 1958, plaintiff's cabin cruiser, San Souci II, struck the submerged hulk of the cabin cruiser Aloha in Belvedere Cove, San Francisco Bay. Plaintiff contends that the United States is liable for such damage in that it allegedly negligently omitted to mark the wreck of the Aloha in disregard of Section 86 of Title 14 United States Code which is claimed to impose a duty upon the Secretary of the Army, through the Corps of Engineers, to properly mark all sunken vessels abandoned by their owners in the navigable waters of the United States. The pleadings establish that the Aloha was formally abandoned by her owner, Emil L. Olson, on November 20, 1957, three days after she burned and sank in Belvedere Cove. The pleadings and an uncontradicted affidavit filed in support of a motion by the United States for summary judgment also show that the wreck of the Aloha was never marked by her owner or by the United States either before or after abandonment. There remains no issue as to any fact material to the Government's motion for summary judgment and it may therefore be determined solely as a matter of law.

As the first ground for its motion for summary judgment, the United States contends that Section 86 of Title 14 U.S.C. does not impose a duty upon the Secretary of the Army to mark all abandoned wrecks in the navigable waters of the United States, but merely requires him to continue to mark, after abandonment, such wrecks as the Coast Guard may have, in its discretion, marked prior to abandonment. An appraisal of this contention necessitates consideration of the historical background of Section 86, as well as its express terms.

The general maritime law as adopted and applied in the courts of the United States placed the responsibility to properly mark a vessel wrecked in navigable waters upon her owner until such time as

he demonstrated his intention to abandon her, and subjected him to liability for any damage resulting from his failure to maintain a proper marker.[1] But, once an intention to abandon was manifested, the law relieved the owner of all further responsibility, at least if his vessel had been wrecked without fault attributable to him.[2]

As early as 1868, the Congress authorized the Lighthouse Board, at its discretion, to suitably mark any wreck obstructing the entrance of any harbor, or the channel or fairway of any bay or sound. 15 Stat. 249, R.S. § 4676. In 1870, the Congress directed the Secretary of War, upon 30 days' notice to interested parties, to remove any wreck obstructing navigation and sell it to the highest bidder, 21 Stat. 197, amended, 22 Stat. 208, and in 1890 authorized him to remove, without notice, any wreck left in navigable waters for more than two months, 26 Stat. 454.

In 1899, the Congress passed the so-called Wreck Act, 30 Stat. 1152, 33 U.S.C.A. §§ 409, 414. This statute formalized the duty which the owner of a wrecked vessel had under the general maritime law to mark the wreck until abandonment and imposed criminal penalties for his failure to do so. In addition, the statute authorized the Secretary of War, at his discretion, to remove or contract for the removal of any sunken vessel which had remained as an obstruction to navigation for more than 30 days or which had earlier been abandoned.[3]

It was against this background that the Congress enacted what is now Section 86 of Title 14 U.S.C.[4] on August 16, 1937, 50 Stat. 666. This statute, as it now appears as Section 86 of Title 14 U.S.C., provides as follows:

"The Coast Guard may mark for the protection of navigation any sunken vessel or other similar obstruction existing on any navigable waters of the United States, whenever the owner thereof has, in the judgment of the Coast Guard, failed suitably to mark the same in accordance with the provisions of section 409 of Title 33 [Section 15 of the Wreck Act of 1899]. Until the abandonment of any such obstruction has been established in accordance with the provisions of section 414 of Title 33 [Section 19 of the Wreck Act of 1899], the owner thereof shall pay to the Coast Guard the cost of such marking. As soon as the abandonment of any such obstruction has been so established, the Secretary of the Army shall keep the same so marked pending removal thereof in accordance with the provisions of section 414 of Title 33, but the Coast Guard may at the request of the Department of the Army continue the suitable marking of any such obstruction for and on behalf of that Department; and the cost of any such marking shall be borne by the Department of the Army. All monies received by the Coast Guard from the owners of obstructions, in accordance with the provisions of this section, shall be covered into the Treasury of the

---

1. The H. S. Nichols, D.C.S.D.N.Y.1893, 53 F. 665; The Plymouth, 2 Cir., 1915, 225 F. 483; National Forwarding Co. v. Payne, D.C.S.D.N.Y.1923, 297 F. 663.

2. Taylor v. Atlantic Mut. Ins. Co., 1867, 37 N.Y. 275; Winpenny v. City of Philadelphia, 1871, 65 Pa. 135; Ball v. Berwind, D.C.E.D.N.Y.1886, 29 F. 541; Thames Towboat Co. v. Fields, D.C.S.D. N.Y.1922, 287 F. 155; Gulf Coast Transportation Co. v. Ruddock-Orleans Cypress Co., D.C.E.D.La.1927, 17 F.2d 858; The Manhattan, D.C.E.D.Pa.1935, 10 F.Supp. 45, at page 49.

3. Regulations promulgated under the Act provide a method for formally abandoning a wreck by sending written notice to the District Engineer of the Army in whose jurisdiction the wreck is located and a copy to the District Commander of the Coast Guard in the same area. 33 C.F.R. § 64.10–5.

4. The statutory provision now comprising Section 86 of Title 14 U.S.C., after being first enacted on August 16, 1937, was originally placed in Section 736 of Title 33. It became Section 86 of Title 14 in 1949 when that Title was enacted into positive law. 63 Stat. 501.

United States as miscellaneous receipts. No provision of this section shall be construed so as to relieve the owner of any such obstruction from the duty and responsibility suitably to mark the same in accordance with the provisions of section 409 of Title 33."

In support of its contention that Section 86 only requires the Secretary of the Army to continue to mark, after abandonment, wrecks theretofore marked by the Coast Guard, the Government argues that Section 86 in specifying that the duty of the Secretary of the Army in respect to abandoned wrecks shall be to "keep the same so marked" means that he shall keep them marked as the Coast Guard may have marked them in accordance with the authorization previously given by the Section. But, in view of the history and background of Section 86, it is more reasonable to interpret the phrase "keep the same so marked" as referring to the suitable marking which the Wreck Act requires of the owner prior to abandonment, this being the marking the Coast Guard is authorized by Section 86 to make in the event the owner fails to do so.

The Committee Report which was before the Congress at the time of the passage of the bill which became Section 86 of Title 14,[5] makes it very clear that this legislation was prompted by the desire to assure the marking of sunken craft for the protection of navigation. The report specifically noted that the criminal penalties imposed by the Wreck Act of 1899 on owners who failed to mark sunken vessels prior to abandonment frequently failed to induce the owners to mark the wrecks, and this was the reason for the broad authorization to the Coast Guard to mark in the event the owner failed to do so. The report also recognized that the effect of the legislation would be to place upon the War Department the duty to mark after abandonment similar to that which rested upon the owner prior to abandonment.

This is apparent from the statement in the report that:

"As the duty of marking wrecked and sunken craft has been placed by law in the first instance upon the owner of the craft and then upon the War Department, the Lighthouse Service does not include in its estimates of appropriations any amount for the services that it renders by way of cooperation."

Under the Government's interpretation of Section 86, the Secretary of the Army would not only be free of responsibility for marking abandoned wrecks which had never been marked, but he would have no obligation even to continue a marking established by the owner in accordance with the Wreck Act. This would be a most anomalous result in view of the manifest purpose of Section 86 to implement the marking of wrecks for the protection of navigation. It is also significant that the Government's interpretation is inconsistent with regulations issued pursuant to Section 86 by both the Coast Guard and the Army's Corps of Engineers which clearly contemplate the marking, at the direction of the Corps of Engineers, of abandoned wrecks which had not been marked before abandonment either by the Coast Guard or the owner. See 33 C.F.R. §§ 64.05–10 and 209.190(3).

In the opinion of the Court, the Congress intended by Section 86 of Title 14 U.S.C. to impose upon the Secretary of the Army the duty to keep all abandoned wrecks in navigable waters suitably marked, whether or not, prior to abandonment, such marking had been established by the owner, the Coast Guard, or not at all.

But, it does not follow that the failure of the Secretary of the Army to perform this duty subjects the United States to civil liability for any resulting damage. For suit will not lie against the United States unless a right of action is expressly given by statute. The liability for which the United States sub-

5. House Report 1222, 75th Congress, 1st Session.

jects itself to suit under the Federal Tort Claims Act is such liability as would be incurred by a private individual under like circumstances. 28 U.S.C. §§ 1346 (b) and 2674.[6] As the second ground for its motion for summary judgment, the United States urges that suit will not lie under the Tort Claims Act for breach of the statutory duty to mark an abandoned wreck because a private individual is not liable for damages resulting from a failure to mark a wreck after its abandonment. In the opinion of the Court, the Government is correct in this contention.

As has been noted the general maritime law did not place upon the owners of wrecked vessels the burden of marking them in perpetuity, but relieved them of responsibility for the wreck upon its abandonment, at least if the vessel had been wrecked without fault attributable to her owner. The Wreck Act of 1899 which restated the obligation of owners of wrecked vessels to suitably mark them and imposed criminal penalties for failure to do so, likewise relieved the owners of further responsibility after abandonment.

The Secretary of the Army cannot reasonably be regarded, as plaintiff would have him be, as a mere substitute for the owner of a wrecked vessel carrying on the same responsibilities for marking as the owner had as a private individual.[7] For, the Secretary of the Army is saddled with an onerous duty which the law has never seen fit to impose generally upon private individuals, namely, the duty to suitably mark abandoned wrecks in navigable waters in perpetuity or remove them. To the extent that private individuals may continue to be responsible for their sunken vessels after abandonment, as a consequence of some fault attributable to them which caused the sinking, such responsibility, flowing from their own negligence, clearly would not shift to the Secretary of the Army by virtue of his statutory duty to mark

---

**6.** Section 1346 of Title 28 U.S.C. provides that the District Courts of the United States shall have jurisdiction of civil actions on claims against the United States for money damages for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

Section 2674 of Title 28 U.S.C. provides that: "The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages."

**7.** Plaintiff relies on two cases in support of her view that the Secretary of the Army is merely carrying on the marking required of a private shipowner, Somerset Seafood Co. v. United States, 4 Cir., 1951, 193 F.2d 631 and Cornell Steamboat Company v. United States, D.C.S.D. N.Y.1956, 138 F.Supp. 16.

The opinion of the court in Somerset does contain a statement to that effect. But, the facts in Somerset were materially different from those in the present case. In Somerset, the United States was the owner of the wrecked vessel and had deliberately sunk her in navigable waters, and abandoned her there. Under these circumstances, the general maritime law would not have relieved a private shipowner of responsibility even after abandonment. In re Petition of Boat Demand, Inc., D.C.Mass.1959, 174 F.Supp. 668. Moreover, the United States had in fact undertaken to mark the wreck and had done so in a negligent manner.

In Cornell the Federal District Court gave judgment against the United States in a suit under the Tort Claims Act for damages resulting from the failure of the Secretary of the Army to mark an abandoned wreck. But, the Court, in its opinion, gave no consideration to the question whether the liability asserted against the United States was such liability as a private person would have had under like circumstances. On appeal, the Court of Appeals vacated the judgment on the ground that another judgment had been rendered in a suit under the Public Vessels Act, 46 U.S.C.A. § 781 et seq., for the same damages and only one recovery could be had, 2 Cir., 1957, 247 F.2d 275.

abandoned wrecks, but would still remain with the owner. In re Petition of Boat Demand, Inc., D.C.Mass.1959, 174 F. Supp. 668.

■ Since it appears that the duty of the Secretary of the Army to mark abandoned wrecks cannot be equated to any duty imposed by law upon private individuals under similar circumstances, suit will not lie against the United States under the Tort Claims Act for damages allegedly resulting from the failure of the Secretary of the Army to perform his duty.

The motion of the United States for summary judgment in its favor is granted.