# RICHARDSON *v.* HARMON, RECEIVER OF THE TOLEDO TERMINAL AND RAILWAY COMPANY.

## APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 10.  Argued April 25, 26, 1911.—Decided November 20, 1911.

In construing an act of Congress, the known policy of Congress in regard to the subject-matter of the statute will be considered.

The policy of Congress in enacting statutes in regard to the liability of vessel owners has been to encourage investment in ships and to that end to relieve the owners from liabilities that are not the result of their own fault, negligence or privity.

Section 18 of the act of June 26, 1884, 23 Stat. 57, c. 121, adds to the claims against which vessel owners can limit their liability and includes those arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime, but leaves them liable for their own faults, neglect and contracts.

The owners of a vessel colliding by its own fault with a structure on land can limit their liability for the damages done to their interest in the vessel although such a collision may not be a maritime tort, and the District Court has jurisdiction to entertain a petition to that effect.

THE facts, which involve the construction of the statutes limiting liability of vessel-owners, are stated in the opinion.

*Mr. Harvey D. Goulder* and *Mr. Frank S. Masten* for appellants:

The District Court of the United States has jurisdiction to entertain a libel or petition for limitation of liability of the owners of a vessel against claims for non-maritime damages or any claim for any liability or debt, although not within the admiralty and maritime jurisdiction of such court.  See act of March 3, 1851, c. 43, 9 Stat. 635,

§§ 4282–87, Rev. Stat.; § 18 of act of June 26, 1884, 23 Stat. 57; Act of June 19, 1886, 24 Stat. 79. These statutes have been construed in *The Republic*, 61 Fed. Rep. 109, 113; *O'Brien* v. *Miller*, 168 U. S. 287, 303.

While under the act of 1851, it has been held that a non-maritime damage, *i. e.*, one not within the admiralty and maritime jurisdiction in a direct proceeding on the claim, could not be limited against, this court has never so held, nor has any court so held where the cause arose subsequent to the enactment of § 18 of the act of 1884, and the question was considered.

The general maritime law gave limitation of liability to owners of vessel property, to the end that merchants might be encouraged to invest in maritime commerce. *The Rebecca*, 1 Ware, 187; *Norwich Co.* v. *Wright*, 13 Wall. 104, 116; *The Scotland*, 105 U. S. 24, 28; *The Lottawanna*, 21 Wall. 558, 576; *Providence & N. Y. S. S. Co.* v. *Hill*, 109 U. S. 578; *Ex parte Phenix Ins. Co.*, 118 U. S. 610, 625; *The Maine*, 152 U. S. 122; *N. J. Steam Nav. Co.* v. *Bank*, 6 How. 344.

The language of the act of 1884 is as broad as it can be made, thereby showing that it was the intent of Congress to remove all exceptions save those named in the proviso, whether maritime or non-maritime and whether created with or without the privity or knowledge of the owner.

For legislative history of the act, see 15 Cong. Rec., pt. 1, p. 976; pt. 4, pp. 3650, 3970–74, 5440; H. R. bill, 2248, and Sen. bill 1448, 48th Cong., 1st Sess.

Almost since a merchant marine has existed in any civilized nation, the ship herself has been treated as a sentient thing, liable for her own wrong in whosesoever hands she may be, liable for her own contractural obligations and, under the general maritime law, the liability ended with the loss or surrender of the ship and freight. *Tucker* v. *Alexandroff*, 183 U. S. 438. Congressional records may be referred to to ascertain legislative intent where

the meaning is in controversy. *Ayer & Lord Tie Co.* v. *Kentucky*, 202 U. S. 409, 427; *The Delaware*, 161 U. S. 459, 472; *Butler* v. *Boston S. S. Co.*, 130 U. S. 527, 554.

The statute being an adoption of the general maritime law, the nationality of the vessel or the place of injury is immaterial where the courts of the United States are resorted to. *The Scotland*, 105 U. S. 24; *The Scotland*, 118 U. S. 507; *The Great Western*, 118 U. S. 520.

The District Court of the United States has authority to give the benefit of the limitation of maritime and non-maritime liabilities alike. *Schuchardt* v. *Angelique*, 19 How. 239, 241; *The J. E. Rumbell*, 148 U. S. 1; *Davis* v. *Child*, 2 Ware, 78; *The H. E. Willard*, 52 Fed. Rep. 387; *The Hamilton*, 207 U. S. 398, 406; *N. J. Steam Nav. Co.* v. *Bank*, 6 How. 319.

*Mr. George L. Canfield*, with whom *Mr. Frank H. Canfield* was on the brief, for appellee:

This case is controlled by *Ex parte Phenix Ins. Co.*, 118 U. S. 610, and the District Court has no jurisdiction.

The injury done by the "Crete" to the railway bridge was not a maritime tort but a trespass to realty of which there is no jurisdiction in the American admiralty. *The Troy*, 208 U. S. 321; *Railroad* v. *Steamship Co.*, 208 U. S. 316; *The Phœnix Co.* v. *The Poughkeepsie*, 212 U. S. 558.

Section 18 of the act of June 26, 1884, 23 Stat. 57, does not enlarge the jurisdiction of the District Courts nor bring non-maritime liabilities within the scope of the limited liability statutes. Rev. Stat., §§ 4282–89; 24 Stat. 79.

The argument of appellants requires such an interpretation of § 18 as not only repeals, as of its date, all laws in respect of the liability and non-liability of ship-owners, but also destroys the settled limits of admiralty jurisdiction.

Section 18 applies to contract liabilities only and does not affect the original law of 1851. This has been the

conclusion of nearly, if not quite all, of the courts which have considered the question. The consensus of judicial opinion is against the effect which appellants ascribe to the later law and it is significant that, although it has been frequently before our admiralty courts, no authority appears to sustain their position. *Towing Co.* v. *Trans. Co.*, 155 Fed. Rep. 11; *S. C.* (certiorari denied), 207 U. S. 596.; *Force* v. *Ins. Co.*, 35 Fed. Rep. 767, 778; *Miller* v. *O'Brien*, 35 Fed. Rep. 779, 783; *The Carver*, 35 Fed. Rep. 665, 669; *McPhail* v. *Williams*, 41 Fed. Rep. 61; *Douse* v. *Sargent*, 48 Fed. Rep. 695; *Whitcomb* v. *Emerson*, 50 Fed. Rep. 128; *The Republic*, 64 Fed. Rep. 109, 113; *The Faxon*, 75 Fed. Rep. 312, 318; *Gilchrist* v. *Ins. Co.*, 104 Fed. Rep. 566, 573; *The Puritan*, 94 Fed. Rep. 365; *Rudolf* v. *Brown*, 137 Fed. Rep. 106.

Congress intended to preserve the act of 1851 as to torts and to cover contract liabilities by § 18 of the act of 1884.

The legislative history of § 18, so far as it appears in the Congressional Records, cited by appellants, indicates that Congress was satisfied with the earlier law and intended it to remain in respect of torts: this view is supported by the subsequent legislation of 1886; that it desired to give a further limitation against liabilities arising out of contract and so make the law as a whole afford protection against both classes of liabilities. And see *The Ella*, 8 Am. Law Reg. 206 (1858).

The law of limited liability of ship-owners is confined to the subject-matter of admiralty and maritime jurisdiction and does not extend to liabilities beyond. *Goodrich Transportation Co.* v. *Gagnon*, 36 Fed. Rep. 123; *Re Gauntt*, 141 U. S. 1, 12.

Mr. Justice Lurton delivered the opinion of the court.

The steam barge "Crete" while proceeding up the Maumee River from Lake Erie collided with the abutment

of a railway draw-bridge, resulting in great damage to both barge and bridge. For the damage sustained by the bridge an action was brought against two of the owners of the barge in a common-law court of the State at Toledo, Ohio. Thereupon the owners of the barge, three in number, filed their petition and libel in the District Court of the United States at Cleveland, Ohio, where two of them resided and where the "Crete" was lying, for a limitation of liability under §§ 4283–4285, Revised Statutes and § 18 of the act of June 26, 1884, 23 Stat. 57, c. 121.

This petition duly averred that the said collision was without fault upon the part of the "Crete;" but, if there was any, it was without the privity or knowledge of the owners, or either of them. It stated that the damages claimed in the pending action at law were thirty-five thousand dollars, and that they apprehended other actions of like kind, and if liable as claimed, the aggregate would greatly exceed the value of the interests of the owners in the vessel and her freight. Therefore, the petition sought the benefit of the limited liability act of Congress and the right to defend against any liability as provided by general law and admiralty rule 56 of the Supreme Court.

Under this petition an appraisement was made of the value of the "Crete" on the termination of her voyage, and the value of each separate one-third interest of each owner in the vessel, and her pending freight was appraised at $4,171.50, for which value bond was made to stand in the room and place of the boat and her freight. Monition issued in usual form requiring every one claiming any loss or damage "by reason of the premises," to appear and make proof of their respective claims.

The appellees were also enjoined from proceeding with the action pending in the said common-law court, and they, together with all the world, were admonished to bring no other or further actions, and to file their claims against the "Crete," or her owners, in the court below, that they

might share in the distribution of the appraised value of the said vessel and her pending freight.

The appellee, Judson Harmon, as receiver of the Toledo Terminal Railway Company, owner of the bridge damaged by the collision mentioned, appeared and excepted to the jurisdiction of the court. This exception was sustained and the injunction dissolved, the court holding that the cause of action asserted in the common-law court of Ohio by said receiver against the owners of the colliding barge was for a non-maritime tort, not cognizable in a court of admiralty, and that the limited liability act of Congress did not extend to any such right of action.

Prior to the eighteenth section of the act of June 26, 1884, 23 Stat. at Large, pp. 53–57, it had been the settled law that the District Court, sitting as a court of admiralty, had no jurisdiction to try an action for damages against a ship-owner arising from a fire on land communicated by the ship, or from a collision between the ship and a structure on land, such as a bridge or pier. The tort in both cases would have been a non-maritime tort and as such not within the cognizance of an admiralty court. *The Plymouth,* 3 Wall. 20; *The Troy,* 208 U. S. 321.

Inasmuch as the owner's liability was not limited by the statutes providing for a limited liability, the pendency of a petition to obtain the benefits of the limitation did not operate to draw into such a proceeding actions for a liability which could in no wise be affected by it. *Ex parte Phenix Insurance Co.,* 118 U. S. 610. Such was the law and so it still is unless changed by the eighteenth section of the act of June 26, 1884. That section is found in a chapter, the title of which is "An act to remove certain burdens on the American merchant marine and encourage the American foreign carrying trade and for other purposes." The eighteenth section reads as follows:

"That the individual liability of a ship-owner, shall be limited to the proportion of any or all debts and liabilities

that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessels and freight pending: Provided, That this provision shall not affect the liability of any owner incurred previous to the passage of this act, nor prevent any claimant from joining all the owners in one action; nor shall the same apply to wages due to persons employed by said shipowners."

That the provision is not as definite as desirable may be conceded. The contention upon the one hand is that the limitation is extended only to obligations *ex contractu,* while upon the other, that every kind of liability which might fall upon an owner on account of the ship incurred without his knowledge or privity is given the benefit of the provision. That it was intended to limit the owner's liability in respect of debts contracted on account of the ship is plain. But if that was the only purpose why add the significant words, "and liabilities"? The limited liability act, as it stood, did not include the owner's individual liability for obligations *ex contractu* incurred without his knowledge or privity. Neither did it extend to his individual liability for non-maritime torts by the master or crew. Was it the purpose of Congress to exclude this kind of an individual responsibility from the benefits of the limited liability statute, while including every other class and kind of individual liability, except seamen's wages? Is no significance to be attached to the fact that the provision does not stop by adding to the former kind of claims against an owner "any and all debts," but terminates the clause by inserting, "and liabilities," a perfectly unnecessary statement, if it was only meant to extend the limitation to obligations *ex contractu?* The meagre debate which occurred upon this section of the act,—an act which included many other matters concerning the shipping interests of the country,—if competent

at all, throws little or no light as to the meaning which was supposed to be attached to liabilities, as distinguished from claims arising out of contract. There does appear, however, a broad general purpose to put a ship-owner in the status of one whose risk on account of obligations arising from the conduct of the master and crew is confined to his proportionate interest in the ship and her freight. No purpose to repeal or qualify any of the terms of the existing liability law is declared, nor is this section declared, in words, to be an amendment of that law. But neither fact is of any marked importance. If the necessary effect be to repeal any part of the former law because of repugnance, that consequence must be declared. So, too, if it be in effect an amendment of the law as it stood, by extending that law to cases not before within it, that effect must be given to it, without any unnecessary disturbance of the qualifications or procedure under the former law.

The legislation is in *pari materia* with the act of March 3, 1851, 9 Stat. 635, c. 43, as carried into the Revised Statutes as §§ 4283 *et seq.*, and must be read in connection with that law, and so read, should be given such an effect not incongruous with that law so far as consistent with the terms of the later legislation. The former law embraced liabilities for maritime torts, but excluded both debts and liabilities for non-maritime torts. The section under consideration includes debts, save wages of seamen and liabilities of an owner incurred prior to the passage of the law. The avowed purpose of the original act was to encourage American investments in ships. This was accomplished by confining the owner's individual liability, when not the result of his own fault, in the instances enumerated, to his share in the ship. The same public policy is declared to be the motive of the act of which this section is a part. True, a liability may arise out of a contract as well as from a tort. But a liability *ex contractu* is included *ex vi termini*, and the addition of the words "and liabilities"

would be tautology unless meant to embrace liabilities not arising from "debts."

In view of the manifest policy of Congress to further encourage the ship-owning industry and the very broad terms employed in this last legislation, we can but infer that the policy of the Government was to confine the risk of an owner not personally at fault to his interest in the ship. To say that Congress meant no more by extending the limitation to any and all debts and liabilities than to include obligations arising *ex contractu*, would be to utterly ignore the fact that such a construction would leave an owner subject to a large class of obligations arising from non-maritime torts, and leave nothing to which the words, "any and all . . . liabilities" could apply. In *Butler* v. *Steamship Company*, 130 U. S. 527, 549, 553, the words "the liability of the owner . . . shall in no case exceed," etc., were construed as extending to any liability "for any act, matter, loss, damage or forfeiture whatever, done or incurred," and as therefore providing that the "owners shall not be liable beyond their interest in the ship and freight for the acts of the master or crew done without their privity or knowledge." Upon this interpretation of § 4283, it was held that liabilities of the owner for injuries to persons were included in the limitation, as well as injuries to goods. Referring to the eighteenth section of the act of 1884, which did not apply in that case because the injury occurred before its passage, the court said (p. 553), it "seems to have been intended as explanatory of the intent of Congress in this class of legislation. It declares that the individual liability of a shipowner shall be limited to the proportion of any or all debts and liabilities that his individual share of the vessel bears to the whole; and the aggregate liabilities of all the owners of a vessel on account of the same shall not exceed the value of such vessel and freight pending. The language is somewhat vague, it is true; but it is possible that it was

intended to remove all doubts of the application of the limited liability law to all cases of loss and injury caused without the privity or knowledge of the owner. But it is unnecessary to decide this point in the present case. The pendency of the proceedings in the limited liability cause was a sufficient answer to the libel of the appellants."

Touching the wide purpose of Congress as indicated by the various provisions limiting the ship-owner's liability, the court, in the same case, said (p. 549):

"If we look at the ground of the law of limited responsibility of ship-owners, we shall have no difficulty in reaching the conclusion that it covers the case of injuries to the person as well as that of injuries to goods and merchandise. That ground is, that for the encouragement of ship-building and the employment of ships in commerce, the owners shall not be liable beyond their interest in the ship and freight for the acts of the master or crew done without their privity or knowledge. It extends to liability for every kind of loss, damage and injury. This is the language of the maritime law, and it is the language of our statute which virtually adopts that law."

Neither is it necessary to conclude that the section in question is a repealing act as to any of the qualifications of the preceding limitations found in §§ 4283 *et seq.*, of the Revised Statutes. To so hold would be to attribute to Congress a wider purpose than we have any reason to suppose—that of extending the benefits of §§ 4283 *et seq.*, regardless of the owner's knowledge or privity.

That would be to throw the section out of correspondence with the existing limitations.

We therefore conclude that the section in question was intended to add to the enumerated claims of the old law "any and all debts and liabilities" not theretofore included. This is the interpretation suggested in *Butler* v. *Steamship Co., supra.* That the section operates as such an amendment of the existing law and not as a repeal of

the qualifications found in that law, is the view adopted by three Circuit Courts of Appeal, in the cases of *The Republic*, 61 Fed. Rep. 109, in the Second Circuit; *The Annie Faxon*, 75 Fed. Rep. 312, in the Ninth Circuit, and in *Towing Company* v. *Transportation Company*, 155 Fed. Rep. 11, in the Sixth Circuit, as well as by a number of District Courts, among them being the cases of *The Amos D. Carver*, 35 Fed. Rep. 665, and *In re Meyer*, 74 Fed. Rep. 881.

Thus construed, the section harmonizes with the policy of limiting the owner's risk to his interest in the ship in respect of all claims arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime, but leaves him liable for his own fault, neglect and contracts.

If thus the owner's liability for a tort permitted or incurred through the master or crew, although non-maritime because due to a collision between the ship and a structure upon land, be one in respect to which his liability is limited, and he applies for the benefit of such limitation to the proper District Court of the United States, "all proceedings," by the express terms of § 4285, Revised Statutes, "against the owner shall cease." The procedure in any such case is prescribed by the 54th and 55th rules in admiralty, where it is said that the court shall, "on application of the said owner or owners, make an order to restrain the further prosecution of all and any suit or suits against said owner or owners in respect of any such claim or claims." *Providence & N. Y. Steamship Co.* v. *Hill Mfg. Co.*, 109 U. S. 578; *Butler* v. *Steamship Co.*, 130 U. S. 527, 549.

The case of *Ex parte Phenix Insurance Co.*, 118 U. S. 610, which was a petition for the benefits of the limited liability act and to stay suits at common law against the owner for liability by fire carried to buildings on land communicated from the ship, has been cited as holding that the limited liability statute did not apply to such a claim, and that a

court of admiralty could not draw to itself jurisdiction over any such claim. But that liability was incurred on September 20, 1880, a date antecedent to the act of 1884, which act expressly excluded liabilities which arose before its passage. That the decision by this court was not made until November, 1886, and that the opinion makes no reference to the act of 1884 is of no importance, since the act had no application.

*The decree is reversed and the case remanded for further proceedings in accordance with this opinion.*