---

## THE NO. 6.

### (Circuit Court of Appeals, Second Circuit. February 6, 1917.)

### No. 64.

1. NAVIGABLE WATERS ☞8—GAS MAIN ACROSS RIVER—INJURY BY DREDGE—LIABILITY.

   The right to improve the navigability of a stream is paramount to the rights of a gas company, given permission by proper authority to lay its pipes in the bottom of the stream, and a dredge employed in such improvement can be held liable for an injury to the company's pipes only on the ground of negligence.

   [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 21.]

2. SHIPPING ☞208—LIMITATION OF LIABILITY—PRIVITY OR KNOWLEDGE OF CORPORATION.

   To affect a corporate shipowner with privity or knowledge which will debar it of the right to limitation of liability, such privity or knowledge must be of the managing officers.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. § 645.]

3. SHIPPING ☞141(1)—LIMITATION OF LIABILITY—SUBJECTS OF LIMITATION.

   A shipowner may limit his liability for a tort, although it is nonmaritime and could not be sued for in admiralty.

   [Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 493, 497, 499.]

Appeal from the District Court of the United States for the Southern District of New York.

Petition in admiralty of the R. G. Packard Company, owner of steam dredge No. 6, for limitation of liability. From a decree holding

the dredge without fault for injury to a gas pipe, the Standard Gaslight Company of the City of New York appeals. Affirmed.

For opinion below, see 222 Fed. 576.

The final decree of the District Court was entered upon the petition of the R. G. Packard Company as owner of dredge No. 6, adjudging said dredge to have been without fault in respect of the injury set forth in the petition. Petitioner's dredge was engaged in improving the navigation of the Harlem River, beneath the bottom of which stream extended pipes or mains for the conveyance of illuminating gas belonging to claimant, Standard Gaslight Company. The operation of the dredge broke the Standard Company's main, causing considerable damage. To recover for this injury the Standard Company began an action at law against the Packard Company. Thereupon this petition was filed, denying all liability and praying in the usual alternative for a decree limiting liability to the value of the dredge. The District Court held: (1) That it had jurisdiction to entertain the proceeding, and (2) that the injury wrought had been inflicted without fault or negligence of petitioner; a conclusion involving the finding (3) that there was no privity or knowledge on the part of the petitioner. From final decree in accordance with the foregoing, appeal was taken by the Standard Company.

Shearman & Sterling, of New York City (John A. Garver and Carl A. Mead, both of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (Mark Ash, of New York City, of counsel), for appellee.

Before COXE, WARD, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). While this appeal rests principally upon alleged infirmity of jurisdiction in the court below, error is also asserted in that the trial judge failed to find the breaking of the Standard Company's main a trespass, and refused to deny limitation on the ground of privity or knowledge imputable to the Packard Company.

[1] Release from all liability was granted because petitioner affirmatively proved freedom from negligence in the management of its dredge; whereas, if the injury to the main resulted from a trespass, no exercise of care would avoid responsibility, under authorities of which Frontier, etc., Co. v. Hepp, 66 Misc. Rep. 265, 121 N. Y. Supp. 460, is a fair example.

Assuming, with appellant, that the main was broken by the spud of the dredge descending into the ground under water where the pipe was buried, to call such injurious contact a trespass involves the assumption that appellant's pipe had a right in or to the ground covering it, or a right to be where it was, superior to that of the dredge spud. Granting for purposes of argument (but not holding) that Standard Company had duly obtained permission from all necessary authorities to lay pipes where they were, it is not true that, as to the ground under the navigable waters of the Harlem River, the pipes or their owner had rights superior to a craft which was improving the navigation of the stream, and such was the occupation of the dredge when it fouled the main. The dredge was responsible only for negligence; the rights of navigation and of improving navigability were paramount. Our decision in Western Union, etc., Co. v. Inman, etc., Co., 59 Fed. 365, 8 C. C. A. 152, is applicable.

[2] The assertion of privity or knowledge, made at bar, must be considered under the rule stated by Wallace, J., in The Republic, 61 Fed. 113, 9 C. C. A. 390, that to "affect a corporate shipowner with privity or knowledge, such privity or knowledge must be of the managing officers." Our later decisions (In re Smith & Sons, 193 Fed. 395, 113 C. C. A. 391, and In re P. Sanford Ross, 204 Fed. 248, 122 C. C. A. 516) have but applied that rule to other facts. In this case, if it be assumed that petititioner's shore manager was a managing officer, we agree with the lower court that, after reasonable efforts to ascertain the location of claimant's pipes, he did not know where they were, and was not negligent in respect of such ignorance.

[3] The ground for challenging jurisdiction herein is briefly that the wrong complained of, and for which Standard Company brought suit, is not a maritime tort. As it was not wrought on or in the water, this is admitted. But the limitation proceeding was brought in strict conformity with Richardson v. Harmon, 222 U. S. 96, 32 Sup. Ct. 27, 56 L. Ed. 110, and this is also admitted. The rest of appellant's proposition is that this decision was erroneous, in that the Supreme Court, while holding that a nonmaritime tort might be limited against, overlooked the fact that such limitation necessarily constituted an exercise of nonmaritime jurisdiction—something beyond the constitutional grant of power to the judicial arm of the government, and equally beyond the power of Congress to create or confer.

It would, indeed, be remarkable that a point such as this could be overlooked by the court, even had it not been argued. An examination of the record and briefs in that case shows that the District Court certified as the reason for dismissing the petition in the lower court that the act of 1884 (Act June 26, 1884, c. 121, 23 Stat. 57) did "not limit the liability of the shipowner in respect of any transaction or subject, except those within the jurisdiction of the District Court sitting as a court of admiralty.", In argument it was plainly put, and by distinguished counsel, that proceedings for limitation of a shipowner's liability from all demands, whether ex contractu or ex delicto, are within the general maritime law and admiralty jurisdiction, and that such a proceeding was an independent head of jurisdiction, without regard to whether the claims limited against were such as might have been sued upon in the admiralty or not.

There is no doubt that the case relied upon is controlling authority here, and the decree appealed from is affirmed, with costs.