## In re HIGHLAND NAV. CORPORATION.

District Court, S. D. New York. December 10, 1927.

1. **Navigable waters** ⬅️24—**Under general maritime law, owner is under no obligation to remove vessel sunk without his fault and abandoned.**

Under the general maritime law, a shipowner whose vessel has been wrecked and sunk without his fault has a right to abandon it, and after abandonment he is under no obligation to raise or remove it, and is not personally liable for expense of removal.

2. **Admiralty** ⬅️1—**Rules of general maritime law cannot be qualified or impaired by local legislation.**

Rules of general maritime law cannot be qualified or impaired by state legislation or municipal ordinance.

3. **Shipping** ⬅️213—**Wrecked ship, after abandonment, has no owner.**

A wrecked vessel, as regards removal or payment of expense of removal, after it has been abandoned by owner, has no owner.

4. **Municipal corporations** ⬅️719(4)—**Shipping** ⬅️207—**City permit to moor vessels at pier held not to create landlord and tenant relationship, as respects shipowner's liability to remove wreck or limit liability (Laws N. Y. 1923, c. 477, § 1 [amending § 859, Greater New York Charter, as re-enacted by Laws 1901, c. 466]).**

City permit to tie up vessels at pier at a specified monthly rental, revocable at will of the commissioner of docks, purporting to have been given under Laws N. Y. 1923, c. 477, § 1 (amending section 859 of the Greater New York Charter, as re-enacted by Laws 1901, c. 466), authorizing city of New York to charge wharfage and dockage, held not to create landlord and tenant relationship, so as to obligate shipowner to leave leased premises in condition in which they were when received, nor constitute waiver of shipowner's right to exemption from liability on abandonment of wrecked vessels.

5. **Municipal corporations** ⬅️719(4)—**Implied promise to comply with city ordinance as to removal of wrecks cannot be incorporated in city permit to moor vessels at pier (Laws N. Y, 1923, c. 477, § 1 [amending § 859, Greater New York Charter, as re-enacted by Laws 1901, c. 466]).**

Under the general maritime law, promise of shipowner to remove abandoned wreck cannot be incorporated in permit from city authorizing owner to moor vessels at pier for monthly rental, by reason of an ordinance relating to removal of wrecks, which city, under Laws N. Y. 1923, c. 477, § 1 (amending section 859, Greater New York Charter, as re-enacted by Laws 1901, c. 466), had no power to enact.

6. **Navigable waters** ⬅️24—**Owner's right to abandon sunken vessel is not dependent on location thereof.**

Owner's right to abandon sunken vessel is not dependent on place wherein vessel lies.

**7. Shipping ☞207—Limited Liability Act applies to nonmaritime as well as maritime liabilities, and cannot be qualified by local legislation (46 USCA §§ 183–185).**

Limited Liability Act (Rev. St. § 4283–4285 [46 USCA §§ 183–185; Comp. St. §§ 8021–8023]) is applicable to nonmaritime as well as to maritime liabilities, and cannot be limited or qualified by municipal ordinance or state legislation.

**8. Shipping ☞207—Owner's failure to keep man on duty in fireroom of vessel held not to defeat right to limitation of liability for removal of burned vessels after its sinking and abandonment. (Limited Liability Act [46 USCA §§ 183–185]).**

Owner of vessels moored at pier under permit from city did not lose its right to limit its liability, under Limited Liability Act (Rev. St. §§ 4283–4285 [46 USCA §§ 183–185; Comp. St. §§ 8021–8023]) for expense of their removal after burning and sinking, because it failed to have somebody in the fireroom of the vessel at night while there was a fire there, merely because it was practice of city to do so, in view of stipulation that it was not customary for other vessel owners to keep a man on duty in fireroom at night, and that owner employed competent watchman, who was on duty at night of fire, especially in absence of evidence that the banked fire had any connection with burning and sinking of vessel.

In Admiralty. In the matter of the petition of the Highland Navigation Corporation for limitation of liability. Decree for petitioner.

Barry, Wainwright, Thacher & Symmers, and John C. Crawley, all of New York City, for petitioner.

George P. Nicholson, of New York City, and Charles J. Carroll, of Brooklyn, N. Y., for claimant.

BONDY, District Judge. This is a proceeding for the limitation of the liability of the owner of the steamships Nassau and Grand Republic, which were destroyed by fire on the night of April 25, 1924. It has been stipulated as follows:

In accordance with a permit granted by the city of New York, the owner of the pier at 155th street and North River, and of the land under water adjacent thereto, the Grand Republic had been tied along the northerly side of the pier, and the steel steamer Highlander had been moored outside the Grand Republic, and the Nassau outside the Highlander during the winter. They had been overhauled in preparation for active service. The Nassau had passed her annual inspection by the United States steamboat inspectors. The inspection of the Grand Republic had been begun, but had not been completed. The Nassau sank at a point alongside the southerly side of the pier, to which she had been towed during the fire. The Grand Republic sank in the slip, and inside the pier end line.

There was in force at the time of the fire section 120, article 8, chapter 8, of the Ordinances of the City of New York, which provided that, in case any vessel shall be sunk or wrecked, and be abandoned for 10 days, the commissioner shall notify the owner of such abandoned vessel to remove the same forthwith, and if he fails to comply with the notice the commissioner shall cause the vessel to be removed, and that the expense of such removal shall be recoverable by action from the owner, and shall be a lien on the vessel removed until paid, and that, if not claimed within 30 days after the removal the vessel shall be sold, and the proceeds of sale shall be paid into the city treasury. Upon the sinking of the vessels the petitioner abandoned them. After being requested by the commissioner of the department of docks to move the wrecks of the vessels, petitioner informed the commissioner that the wrecks had been abandoned, that one offer had been received to remove the wrecks for $20,500 and another for $40,000, and that petitioner denied any obligation to remove the abandoned wrecks. The petitioner also notified the Secretary of War of the abandonment, but the War Department declined to remove the wrecks, because they lay to the shoreward of the pier line.

The engineer had returned to the Nassau about 11 p. m. April 25, and had thrown some soft coal on the fire, closed the door of the firebox, and, believing everything to be in order, had left the Nassau and gone to bed on board the Highlander. Neither the petitioner nor the master had directed any one to remain on duty in the fireroom during the night. There was no one on duty in the fireroom after the fire had been banked about 5 p. m. There was no steam in the Nassau after that hour. There was no fire under the boilers of any of the other vessels. It was also stipulated that, if witnesses were called, they would testify that it is customary on boats owned by the city of New York to keep a competent man on duty in the fireroom during the night, but it is not customary or usual for vessel owners other than the city of New York to keep a man on duty in the fireroom during the night, even though there be fire in the firebox, unless his presence be required to keep up steam; that the man employed by the petitioner to watch the Nassau, the Grand Republic, and Highlander at night was a competent and experi-

enced watchman, and that he was on duty at the time of the fire; that he made his last round of inspection at about midnight, when he went over the deck of the Nassau and to the entrance of the fireroom and engineroom.

It was admitted that neither party knows of any statute, ordinance or regulation requiring the owner to provide a man to remain on duty in the fireroom of the Nassau during the night of April 25th. It was further stipulated that, unless the court can hold as a matter of law that the petitioner was negligent in not providing a man to remain on duty in the fireroom of the Nassau during that night, and that such negligence debars the petitioner from obtaining a limitation of liability, no negligence on the part of the petitioner or its servants could be shown, and that the burning and sinking of the vessels was without the privity or knowledge of the petitioner, leaving as the only question in the case whether the petitioner is entitled to a limitation of liability with reference to any claim the city may have against the petitioner by virtue of the ordinance.

The city of New York contends that the petitioner cannot limit its liability to the city for the expense of removing the wrecks from the land under water, owned by the city, because the contract for making the vessels fast to the wharf was not a contract for wharfage, but a lease of so much of the wharf as was required for the purpose of tying the vessels to the wharf, and because, when they were destroyed, they had been withdrawn from navigation and in dead storage for the winter (see The James T. Furber [D. C.] 129 F. 808; The C. Vanderbilt [D. C.] 86 F. 785, affirmed [C. C. A.] 93 F. 986; The Richard Winslow [D. C.] 67 F, 259, affirmed [C. C. A.] 71 F. 426), and because the lease was a contract nonmaritime in its nature, and because there was implied in it a promise made by the petitioner to surrender the leased premises in the condition in which they were when the term commenced, and a promise by the petitioner to comply with the ordinance and to remove the wrecks or pay the cost of removal, and because the liability therefor arises out of obligations assumed personally by the petitioner, and not out of any obligation imputed to it by reason of any act of the master or crew. See Richardson v. Harmon, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110; Pendleton v. Benner Line, 246 U. S. 353, 38 S. Ct. 330, 62 L. Ed. 770; Great Lakes Towing Co. v. Mill Transp. Co. (C. C. A.) 155 F. 11, 22 L. R. A. (N. S.) 769; The Loyal (C. C. A.) 204 F. 930.

[1] It is well settled that a shipowner whose vessel has been wrecked and sunk without his fault has a right to abandon it, and that after abandonment he is not under any obligation whatsoever to raise or remove it,· and is not personally liable for the expense of removal. This is so, though an act of Congress (Rivers and Harbors Act March, 1899, § 20 [33 USCA § 415; Comp. St. § 9925]) authorizes the Secretary of War to remove obstructions to navigation, and provides that the expense shall be a charge upon the vessel raised by the government, and that, if the owner fails to reimburse the United States for such expense within a certain time after notification, the vessel may be sold and the proceeds covered into the Treasury of the United States. Loud v. United States (C. C. A.) 286 F. 56. See also Ball v. Berwind (D. C.) 29 F. 541.

[2] The exemption from liability after abandonment arises under the general maritime law. It, therefore, cannot be qualified or impaired by state legislation or municipal ordinance. Southern Pac. Co. v. Jensen, 244 U. S. 205, 37 S. Ct. 524, 61 L. Ed. 1086, L. R. A. 1918C, 451, Ann. Cas. 1917E, 900; Union Fish Co. v. Erickson, 248 U. S. 308, 39 S. Ct. 112, 63 L. Ed. 261; Robins D. D. & R. Co. v. Dahl, 266 U. S: 449, 45 S. Ct. 157, 69 L. Ed. 372; The Thielbek (C. C. A.) 241 F. 209; Rodgers & Hagerty v. City of New York (C. C. A.) 285 F. 362.

[3] Statutes imposing on an owner of a wreck the duty to remove it, or to pay local authorities the expense of removal, have been held not to apply to an owner whose vessel has been wrecked and abandoned. The wrecked vessel after abandonment has no owner.· See Winpenny v. City, 65 Pa. 135; Thames Towboat Co. v. Fields (D. C.) 287 F. 155.

[4] The permit gave nothing more than permission, effective as of May 1, 1923, to tie up the steamers Grand Republic, Claremont, Highlander, and Nassau on the north side of the pier at 155th street, North River, at a rental for the berth at the rate of $75 to $150 per month, depending upon whether the berth is occupied by all or some of them, revocable at the will of the commissioner of docks, and expiring by limitation of time April 30, 1924. The permit was given pursuant to section 1, chapter 477, of the laws of 1923 (amending,section 859 of the Greater New York Charter, as re-enacted by Laws 1901, c. 466), which merely authorized the city of New York to charge wharfage and dockage from every vessel that uses or makes fast to any wharf, or to any vessel lying at

such wharf, or to any vessel lying outside of such vessel.

There is nothing in the wording of the statute which authorized the making of the permit, or in the wording of the permit that justifies the conclusion that the permit created the relation of landlord and tenant, or constituted a lease of any real property, wherein and whereby the petitioner assumed the obligation to leave any leased premises in the condition in which they were when received, or wherein and whereby the petitioner waived its right to exemption from liability on abandonment, or assumed the obligation to remove, or pay for the removal of, a wrecked vessel that he has abandoned.

[5] Nor can a promise to remove the wreck be incorporated in the permit of the city by reason of an ordinance which the city did not have power to enact. See People ex rel. Rodgers v. Coler, 166 N. Y. 1, 59 N. E. 716, 52 L. R. A. 814, 82 Am. St. Rep. 605. There is no justification for implying a promise to comply with an ordinance, and to remove or pay for the removal of the wrecks, when under the general maritime law an owner may abandon a vessel which sunk without any liability for its removal. As was said by Judge Hough in Old Dominion Steamship Co. v. City of New York (C. C. A.), 286 F. 155, 157: "A fleet of vessels, one after the other, might lie at the same berth for years, and the owner of the fleet might have an exclusive right of berthing and paying wharfage; but that business would not make him a lessee."

[6] Nor is the right to abandon dependent upon the place wherein the vessel lies sunk. In Taylor v. Atlantic Mutual Ins. Co., 37 N. Y. 275, the vessel was accidentally destroyed by fire and sunk while loading at a pier in a slip, and afterwards abandoned. The Court of Appeals said (page 284): "The place where said wreck was sunk was a part of an arm of the sea, and embraced a portion of the navigable waters of the state. It may be very doubtful whether the defendants were under any obligation to remove said wreck. The current of authority would seem to show that they were not."

[7] The Limited Liability Act (Revised Statutes, §§ 4283–4285; Compiled Statutes, §§ 8021 to 8023 [46 USCA §§ 183–185]) is applicable to nonmaritime as well as to maritime liabilities (Richardson v. Harmon, 222 U. S. 96, 32 S. Ct. 27, 56 L. Ed. 110; The No. 6 [C. C. A.] 241 F. 69), and cannot be limited or qualified by municipal ordinance or state legislation. Although the

vessels had been withdrawn from navigation and made fast to the pier during the winter, they had been undergoing repairs, and had been inspected in preparation for their navigation, when they were destroyed. This was incidental to their navigation, and not to their dead storage.

The petitioner is not asking for the limitation of any liability arising out of any obligation assumed by it on accepting the permit. Its obligation to pay $75 a month for permission to make fast its ships had nothing whatsoever to do with its right to abandon wrecks. The petitioner is asking for the limitation of liability, if any, arising out of the destruction of the vessels by a fire which took place without its privity. In Hagan v. City of Richmond, 104 Va. 723, 52 S. E. 385, 3 L. R. A. (N. S.) 1120, it was held that the statute of Virginia (Code 1904, § 2011) and the ordinance of the city of Richmond (chapter 77, § 8), in so far as they provide for the removal of wrecked vessels obstructing the harbor of Richmond, at the expense of the owner, are in conflict with the Limited Liability Act, and therefore unenforceable, unless the obstruction occurs with the knowledge or privity of such owner.

[8] It has been stipulated that there was no negligence on the part of the petitioner, and that the vessels were lost without the knowledge or privity of the petitioner, unless the court should find, as a matter of law, that the petitioner should have employed a man to remain on duty in the fireroom of the Nassau at night, while there was a fire there. The court cannot find that the petitioner lost its right to limit its liability because it failed to have somebody in the fireroom of the Nassau at night, while there was a fire there, merely because it appears that it is the practice of the city to do so, in view of the fact that it has been stipulated that it is not customary for vessel owners other than the city to keep a man on duty in the fireroom during the night, and that it appears that the petitioner employed a competent man to watch its vessels, and that such a man was on duty the night of the fire, especially in the absence of evidence that the banked fire had any connection with the disaster.

The court is of the opinion that the petitioner had a right to abandon the vessels, that after abandonment it was relieved from all obligations to remove the vessel, and that, if not, it still had a right to limit its liability.

There, therefore, should be a decree in favor of the petitioner.