**In the Matter of the Complaint of LADY JANE, INC. as Owner of F/V LADY JANE, and Jane Steen, as Owner Pro Hac Vice of F/V Lady Jane for exoneration from or limitation of liability.**

No. 90–881–Civ–J–16.

United States District Court, M.D. Florida, Jacksonville Division.

Jan. 21, 1992.

James J. Taylor, Jr., Timothy J. Conner, Gabel, Taylor & Dees, Jacksonville, FL, for plaintiffs, and et al.

George L. Hudspeth, Mahoney, Adams & Criser, Jacksonville, FL, for Barnett Bank of the St. Johns.

Edward Alfred White, Jacksonville, FL, Robert O. Wilhelm, Robert O. Wilhelm & Associates, P.A., St. Augustine, FL, for Harry Xynides, and et al.

## ORDER

JOHN H. MOORE, II, Chief Judge.

This cause was tried to the Court on September 25 and 26, 1991. In accordance with

Federal Rule of Civil Procedure 52, and having considered the testimony and evidence adduced, the arguments of counsel, and all memoranda of law submitted by the parties, the Court now issues the following opinion as its findings of fact and conclusions of law.

## I. Background facts

From 1986 until February 1989, Petitioner Jane Steen was the owner of the F/V Lady Jane, a shrimping and fishing vessel engaged in commercial fishing. In February 1989, Steen formed the corporation Lady Jane, Inc., of which Steen is the sole shareholder. At that time, ownership of the Lady Jane was transferred from Steen to Petitioner Lady Jane, Inc.

On July 31, 1990, the Lady Jane was delivered to Xynides Boat Yard in St. Augustine, Florida, by her three crew members, Carl Frank Canova, Paul Groff, and Rob Hidenrick. Xynides and Steen entered into an oral contract whereby Xynides would make repairs to the Lady Jane. Specifically, Xynides was to reattach a water tank which had broken loose on a recent fishing voyage, striking the bottom of the vessel and dislodging several hull planks. During the course of the repairs, an Xynides employee, Jerry Hamilton, performed some welding work in order to reattach the tank to the vessel. The welding was performed during the afternoon of August 2, 1990. Sometime during the late evening of August 2, or the early morning hours of August 3, a fire erupted on the Lady Jane which rendered the vessel a constructive total loss.

On September 25, 1990, Petitioner Steen filed a complaint for exoneration from or limitation of liability. Claimant Xynides Boat Yard, Inc. filed its claim against Steen on November 29, 1990, alleging Steen's failure to pay for services rendered and failure to remove the burned-out hulk from the shipyard. Petitioner Steen filed counterclaims against Xynides Boat Yard, Inc., Nicholas Xynides, and Harry Xynides for breach of contract, negligence, and breach of a bailment contract. On September 9, 1991, Petitioner Steen, as owner *pro hac vice* of the F/V Lady Jane, joined by Petitioner Lady Jane, Inc., filed an amended complaint for exoneration from or limitation of liability, and an amended counterclaim. No written claim has been asserted against Petitioner Lady Jane, Inc.

## II. Admiralty Jurisdiction

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1333. Admiralty jurisdiction exists over contracts that are maritime in nature. *Kossick v. United Fruit Company*, 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961). A contract for the repair of a vessel is a maritime contract. *New Bedford Dry Dock v. Purdy*, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922); *David Wright Charter Serv., Inc. v. Wright*, 925 F.2d 783, 784 (4th Cir.1991) (per curiam) (*citing American E. Dev. Corp. v. Everglades Marina, Inc.*, 608 F.2d 123 (5th Cir.1979)). Since Steen and Xynides entered into an oral contract to repair the Lady Jane, this Court has admiralty jurisdiction over all issues relevant to the performance of the contract.

Claimant strenuously disputes the contention that admiralty jurisdiction exists in this case. Claimant correctly points out that the fire on board the Lady Jane did not occur on navigable waters. One general prerequisite to the existence of admiralty jurisdiction in tort cases is that the accident must have occurred on navigable waters. *See Sisson v. Ruby*, 497 U.S. 358, 361–67, 110 S.Ct. 2892, 2895–98, 111 L.Ed.2d 292 (1990) (holding that admiralty jurisdiction over torts exists where the incident occurred on navigable waters, had a potentially disruptive impact on maritime commerce, and the activity giving rise to the incident bears a substantial relationship to traditional maritime activity); *see also Latin Am. Property & Cas. v. Hi–Lift Marina*, 887 F.2d 1477 (11th Cir.1989) and *Lewis Charters, Inc. v. Huckins Yacht Corp.*, 871 F.2d 1046 (11th Cir.1989). All three cases cited above, *Sisson, Hi–Lift Marina,* and *Huckins Yacht,* involved fires which occurred on boats while in storage or docked at a marina. All three cases were based solely on the alleged negligence of the boat owner or marina in storing the boat.[1] The problem with Claimant's argument is

---

1. Although the petitioner-plaintiffs in *Hi–Lift Ma-* *rina* initially sued the marina for negligence,

that jurisdiction is not based on negligence in the present case; jurisdiction here is based on the repair contract entered into by Steen and Xynides, which is undoubtedly maritime in nature. *See David Wright,* 925 F.2d at 784.

Claimant cites *David Wright,* for the proposition that an incident must occur on navigable waters in order for a petitioner to invoke the Limitation of Liability Act, 46 U.S.C.App. § 183 *et seq.* In other words, Claimant contends that admiralty jurisdiction *in tort* must be established prior to initiating a proceeding under Limitation Act. The Court declines to follow Claimant's interpretation of either *David Wright* or the Limitation Act.

In *David Wright,* a shipowner sought protection under the Limitation Act from potential claims resulting from a fire on its ship. *See* 925 F.2d at 784. The fire occurred five months after the ship was placed on blocks to undergo repairs in a shed located seventy-five feet from navigable waters. *Id.* The vessel exploded while undergoing repairs pursuant to a repair contract between the shipowner, David Wright Charter Service, and the shipyard, Jordan Marine Services, Inc. *Id.* Three parties filed claims against the shipowner: Jordan Marine Services, Inc.; and two persons, Messrs. Seals and Wright, who were killed and injured, respectively, by the explosion and resulting fire.

■ The *David Wright* court affirmed the district court's dismissal of the limitation complaint as to the two individual claimants, finding that the tort claims asserted by the claimants did not occur on navigable waters, thus failing the locality test set forth in *Sisson v. Ruby, supra. See David Wright,* 925 F.2d at 784. However, the court also stated that a "contract between a vessel owner and a repair facility for work on a vessel that has not been withdrawn from navigation is within admiralty jurisdiction.... These principles, however, are not applicable to the claims of

Seals and Wright against Charter. Neither Seals nor Wright were parties to the repair contract. They have not made any claim for breach of contract. They complain only of a tort that occurred on land." *Id.* The *David Wright* court failed to mention, regrettably, the outcome of the suit between the contracting parties in that case, David Wright Charter Service and Jordan Marine Services. The court even went so far as to state that "the district court ... properly dismissed Charter's limitation complaint", *id.* at 785, when in fact Charter's complaint against Jordan Marine Services remained legally viable. While the *David Wright* opinion fails to set forth a clear rule to govern cases between contracting parties, the case stands for the proposition that a claim for breach of a maritime repair contract can form the basis for admiralty jurisdiction in an action brought under the Limitation of Liability Act.[2]

■ Another issue remains regarding the Limitation Act: under these facts, may Petitioners limit only their contractual liabilities arising out of the repair contract, or may they also limit any tort liabilities which arise out of the performance of the repairs. The parties have not cited any cases which discuss this issue, and the Court has not found any authority directly on point. The Eleventh Circuit has held that a shipowner may not invoke the Limitation Act to limit tort liabilities arising out of a fire which has occurred on a ship located not on navigable waters but on dry land. *See Hi–Lift Marina, Huckins Yacht, supra.* Based on *Hi–Lift Marina* and *Huckins Yacht,* the Court finds that Petitioners may not limit their liabilities for torts which Petitioners and their agents may have committed while the Lady Jane was on dry land. This distinction makes little difference in this case, however, since Claimant only asserts Steen's negligence as an affirmative defense, not as an independent claim for damages.[3]

breach of contract, and breach of implied warranty, the petitioners abandoned their breach of contract and breach of implied warranty claims at trial. The Eleventh Circuit's opinion in *Hi–Lift Marina* was silent on whether the abandonment of these claims affected the court's ruling on admiralty jurisdiction.

2. Although not discussed by either party, the plain language of the Limitation Act provides for

limitation of liability of a vessel owner's "debts" contracted on behalf of the vessel, in certain circumstances. *See* 46 U.S.C.App. § 189; *Richardson v. Harmon,* 222 U.S. 96, 102, 32 S.Ct. 27, 29, 56 L.Ed. 110 (1911).

3. Although Xynides spent some time at trial asserting that Petitioner's failure to post a fire watch negligently caused the fire, Xynides' claim, filed in this Court on November 29, 1990, makes

■ The Court will consider Petitioners' negligence counterclaim as a pendent state law claim. Since this negligence counterclaim arose out of the same transaction or occurrence as the contractual claims within the Court's admiralty jurisdiction, this Court can properly exercise jurisdiction over the pendent counterclaim as well. *See David Wright*, 925 F.2d at 784. Neither party made a demand for a jury trial on the pendent counterclaim, so the Court will proceed to rule on all issues presented to the Court at trial.

### III. Ownership

■ The Limitation of Liability Act provides that "the owner of any vessel" may seek the protection of the Act. 46 U.S.C.App. § 183. Claimant contends that Steen is not an "owner" entitled to protection under the Limitation of Liability Act because Steen is merely the sole stockholder of the company, Lady Jane, Inc., which does own the vessel.

The Court disagrees with Claimant's conclusion. The Supreme Court has declared that the terms of the Limitation Act should be construed broadly so as to promote the Act's purposes of encouraging and inducing investment in shipping. *See Flink v. Paladini*, 279 U.S. 59, 49 S.Ct. 255, 73 L.Ed. 613 (1929); *see also Admiral Towing Co. v. Woolen*, 290 F.2d 641, 645 (9th Cir.1961); *In re Barracuda Tanker Corp.*, 281 F.Supp. 228, 232 (S.D.N.Y.1968). In *Admiral Towing*, an "owner" was described as one whose

> relationship to the vessel is such as might reasonably afford grounds upon which a claim of liability for damages might be asserted against him, a claim predicated on his status as the person perhaps ultimately responsible for the vessel's maintenance and operation and a claim against which the Limitation Act is designed to furnish protection.

290 F.2d at 645.

Steen was unquestionably the person ultimately responsible for the Lady Jane's maintenance and operation at the time of the fire.

Furthermore, even though the vessel was the property of Lady Jane, Inc., Steen was a person whose relationship to the vessel, as sole stockholder and president of Lady Jane, Inc., was such as might reasonably afford grounds for a claim of liability for damages to be asserted directly against her, possibly on a theory of piercing the corporate veil, or on a claim for acting as the agent for an undisclosed principal.[4] The Supreme Court in *Flink* held that the stockholders of a corporation which held title to a vessel were entitled to the protection of the Limitation Act. *Flink*, 279 U.S. at 63, 49 S.Ct. at 255 (stating that the term "owner" as used in the Act is an "untechnical word" that should be interpreted in a liberal way); *see Dick v. United States*, 671 F.2d 724, 727 (2d Cir. 1982). In addition to her status as stockholder, the Lady Jane was in Steen's exclusive possession, management, and control. *Cf. Admiral Towing*, 290 F.2d at 645. For these reasons, the Court finds that Steen is an "owner" entitled to invoke the protection of the Act.

■ Claimant also disputes the right of Lady Jane, Inc. to seek protection under the Act, although for different reasons. Claimant contends that Lady Jane, Inc. should be time-barred from seeking protection under the Act, since Lady Jane, Inc. did not file a complaint for exoneration from or limitation of liability until after the Act's six-month statute of limitations for filing a complaint had passed. *See* 46 U.S.C.App. § 185 (requiring the vessel owner to file its limitation complaint "within six months after a claimant shall have given to or filed with such owner written notice of claim. . . ."). The Court rejects this contention for two reasons. First, Lady Jane, Inc. has never been on notice of any claim against it, as to this date no claim has been asserted against Lady Jane, Inc. by Xynides Boat Yard, Inc. Second, to the extent there is a statute of limitations issue, the Court finds that the amended complaint which adds Lady Jane, Inc. as a second petitioner does not prejudice the

---

no mention of negligence. The claim only refers to the failure to pay for services rendered, the ship's "unlawful presence" on Claimant's property, and Petitioner's failure to remove the ship from the property.

4. The evidence at trial showed that Steen failed to inform the boatyard that Steen was acting on behalf of Lady Jane, Inc.

Claimant. *See generally* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 1501 (1990). The addition of Lady Jane, Inc. as a Petitioner adds no new counterclaims against Claimant, and adds no new transactions or occurrences to the case.

## IV. Single claimant exception

 Claimant's next contention is that this case falls within the single claimant exception to the Limitation of Liability Act. For a fuller discussion of the exception and the underlying rationale, see *In re Dammers & Vanderheide*, 836 F.2d 750 (2d Cir.1988). When applicable, the single claimant exception requires a district court to dissolve its stay of other proceedings and allow a claimant to proceed in state court against the vessel owner. *Id.* at 755; *see In re Mucho K, Inc.*, 578 F.2d 1156 (5th Cir.1978); *In re Midland Enterprises, Inc.*, 886 F.2d 812, 815 (6th Cir.1989). However, in order to qualify for this exception, a claimant must concede the admiralty court's exclusive jurisdiction to determine all issues relating to the limitation of liability, *see Dammers*, 836 F.2d at 755, and file an appropriate protective stipulation which concedes that the value of the fund is the value of the vessels and freight, waives any right to assert a claim of res judicata based on the state court judgment, and concedes the right to have all limitation of liability issues tried in the federal district court. *Universal Towing v. Barrale*, 595 F.2d 414, 418 n. 6 (8th Cir.1979). Xynides has not conceded this Court's jurisdiction to determine all limitation of liability issues; thus, even though Xynides is a "single claimant," Xynides is not entitled to a lifting of this Court's stay.

## V. Finally, the merits of the case

Xynides Boat Yard, Inc.'s claim is for failure to pay for services rendered on the repair contract, and for failure to remove the Lady Jane from the shipyard after the fire. Ruling on these issues is complicated by the fact that Claimant Xynides has submitted proposed findings of fact and conclusions of law, and a trial brief, which cite no cases in support of its claim, and fail to even address the merits of its claim. Petitioners similarly fail to address the merits of the boatyard's claim for damages. For the reasons set forth below, the Court will find that the Claimant's own failure to perform in a workmanlike manner and to exercise due care during and after the performance of welding on the Lady Jane bars Claimant from recovery against Petitioners.

Petitioners have made three counterclaims against the boatyard. A central issue to these claims is Claimant's assertion, as an affirmative defense to Petitioners' counterclaims, that Steen or her agents were negligent in failing to post a firewatch on board the Lady Jane. The Court initially finds that Nicholas Xynides, the manager of Xynides Boat Yard, never asked Steen to provide a fire watch, never stated to Steen that a fire watch would be required prior to beginning the repair work, and never even mentioned to Steen that welding would be required to reattach the tank. To the extent that there is conflicting testimony on this point, the Court credits the testimony of Steen over the testimony of Xynides.

Both parties have submitted regulations on fire prevention entitled "Standard for Fire Prevention in Use of Cutting and Welding Processes," prepared by the Technical Committee on Cutting and Welding Practices, and acted on by the National Fire Protection Association in 1989 (hereinafter "NFPA Standard"). These regulations have been adopted by the State of Florida and are used generally in the firefighting industry. Chapter 2–2 of the NFPA Standard provides that "[m]anagement shall recognize its responsibility for the safe usage of cutting and welding equipment on its property." Section (b) of chapter 2–2 provides that management must designate an individual responsible for authorizing welding operations in areas not specifically designed or approved for welding activities. This individual must be aware of the NFPA Standard and the fire hazards involved, and may delegate these responsibilities to a foreman, plant manager, other property owner, or other qualified individual. *See* ch. 2–3. Section 3–3 provides that "[f]ire watchers shall be required by the individual responsible for authorizing cutting and welding whenever cutting or welding is performed in locations where other than a minor fire might develop," or where combustible

materials are near the welding site. Finally, the NFPA Standard requires a fire watch to be maintained for at least a half hour after completion of cutting or welding operations to detect and extinguish smoldering fires. *See* ch. 3–3.4.

■ These regulations illustrate the duty of reasonable care incumbent upon the management of Xynides Boat Yard, Inc. to ensure the safe usage of welding equipment on its property. The boatyard, not Jane Steen, was responsible for designating an individual to oversee and authorize welding operations in areas not specifically designed or approved for welding. The Lady Jane, a fuel-soaked wooden boat, was certainly an area not specifically designed or approved for welding. The boatyard could not, and in fact did not, delegate the responsibility for overseeing the safety of welding operations to Steen or any of the Petitioners' employees. The boatyard should have posted fire watchers on board the Lady Jane, since the ship was an area where welding was performed where it was reasonably foreseeable that other than a minor fire might develop. The boatyard should have maintained a fire watch for at least a half hour after completion of welding on board the ship, to detect and extinguish smoldering fires. Since Steen was not responsible for posting a fire watch, and never undertook such a responsibility, she cannot be considered negligent in any way.

■ The Court now turns to Petitioners' counterclaims against Claimant Xynides Boat Yard, Inc., Nicholas Xynides, and Harry Xynides. Petitioners have asserted that Nicholas and Harry Xynides failed to disclose to Petitioner that they were acting as agents for an undisclosed principal, Xynides Boat Yard, Inc. At trial the Court directed a verdict against Petitioners on these counterclaims because Steen, in her dealings with the boatyard, received invoices bearing the boatyard's corporate name, indicating that Steen knew or should have known that she was dealing with a corporation. It is somewhat ironic that Steen has advanced a claim of failure to disclose a corporate principal, when she herself failed to inform the boatyard that she was acting on behalf of Lady Jane, Inc. at the time of the incident. Accordingly, and for the reasons set forth in open court during the trial of this cause, Petitioners cannot recover on their counterclaims against Nicholas and Harry Xynides.

Petitioner makes three related claims against Xynides Boat Yard, Inc.: breach of contract; negligence; and, breach of duty imposed by a bailment contract. These three claims are based on essentially the same theory: that the boatyard breached a duty of ordinary care in performing the welding work which caused Petitioner damage. *See, e.g.,* 5 *Corbin on Contracts* § 1019 (1964) (noting that "[n]ot infrequently the conduct of a defendant may be properly regarded as both a tort and a breach of contract. ...."). The Court's inquiry as to each claim is similar. The main difference between the three claims is in the allocation of the burdens of production of evidence, as will be discussed *infra.*

■ The agreement entered into by Steen and the boatyard was a repair contract, but more generally it was a contract of bailment for mutual benefit, whereby the bailor (Steen, acting on behalf of Lady Jane, Inc.) hired the bailee (Xynides Boat Yard) to perform repairs on the bailed property (the Lady Jane). *See, e.g., Stegemann v. Miami Beach Boat Slips, Inc.,* 213 F.2d 561, 564 (5th Cir.1954); 9 *Williston on Contracts* § 1040 (1967). Under these circumstances the bailee is liable for loss or damage caused by its own negligence, the failure to use ordinary care during the performance of its contractual duties. *See Williston on Contracts* at pp. 889, 958, 1013, and 1022. The Supreme Court set out the standard for judging this sort of claim in *Commercial Molasses Corp. v. N.Y. Tank Barge Corp.,* 314 U.S. 104, 62 S.Ct. 156, 86 L.Ed. 89 (1941). The burden of proving negligence is on the bailor, who can make a prima facie case by proving that the vessel was delivered to the bailee in good condition and damaged while in his possession. *Id.* A rebuttable presumption then arises that the bailee failed to use ordinary care. This inference requires the bailee,

if he would avoid the inference, to go forward with evidence sufficient to persuade that the non-existence of the fact, which would otherwise be inferred, is as probable as its existence. It does not cause the burden of proof to shift, and if the bailee

does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start.

*Commercial Molasses,* 314 U.S. at 111, 62 S.Ct. at 161.

In the case at bar, Petitioners established that the Lady Jane was delivered to the boatyard in good condition, except for the water tank which had broken loose during a recent voyage. While in the boatyard's possession, the vessel was rendered a constructive total loss by the fire. Petitioners thus established a prima facie case and a rebuttable presumption that the bailment contract was breached due to the negligence of the boatyard.

The burden of production then shifted to the boatyard to rebut the presumption of negligence or breach in one of two ways: (1) by proving that it used ordinary care in performing the repairs on the Lady Jane, including the welding; or, (2) by showing how the fire in fact occurred and that the damage was not fairly attributable to its own negligence. *See Erlbacher v. Republic Homes Corp.,* 263 F.2d 217, 221 (8th Cir. 1959) (quoting *Richmond Sand & Gravel Corp. v. Tidewater Constr. Corp.,* 170 F.2d 392, 393–94 (4th Cir.1948)). The first method of rebuttal is unavailing, because the Court finds that the boatyard failed to use ordinary care in failing to post a fire watch both during the welding and for at least a half hour after finishing the welding work. *See Lonray, Inc. v. Azucar, Inc.,* 775 F.2d 1521, 1526 (11th Cir.1985) (requiring the bailee to introduce evidence that it exercised due care to prevent the loss). Claimant could not, and did not, delegate this duty to Steen or her employees. The evidence did show that an employee of the boatyard, Jerry Hamilton (the person who performed the welding work), poured a bucket of water over the welding area after finishing the job, and that no smoldering was visible to Hamilton after pouring the water. However, this single precautionary measure did not relieve the boatyard of its duty to post a fire watch for at least a half hour afterwards. In addition, the Court finds that a reasonably careful person would have used more water than was actually used to prevent smoldering fires after performing an extensive welding job in a wooden vessel.

The second method of rebutting Petitioner's prima facie case requires the boatyard to show that the fire was either not in fact caused by the boatyard's negligence, or that the boatyard's failure to use ordinary care was not the proximate cause of the fire (i.e., the fire was not a foreseeable result of the failure to post a fire watch for at least a half hour). The evidence at trial, specifically the testimony of Petitioner's expert witness, W.J. Hiers, demonstrated that the fire was most likely caused by a piece of "hot slag" left from the welding which lodged between the timbers of the ship, smoldered for hours, and then ignited. The point of origin of the fire was near the port side water tank, near where the welding occurred. The Court finds that the fire on board the Lady Jane was caused by "hot slag" from the welding which embedded in the ship, smoldered for several hours, and then ignited.

The main issue is whether the boatyard's actions were a proximate cause of the fire in failing to post a fire watch during the welding and for at least a half hour after the welding. Xynides Boat Yard has the burden of showing that the fire was not fairly attributable to the boatyard's own negligence. No evidence was presented by Xynides to show that a fire watcher who observed the welding area during the work and for at least a half hour afterwards would not have detected the smoldering hot slag which eventually caused the fire. According to the testimony of witnesses for both parties, Jerry Hamilton completed the welding work around 3 p.m. on August 2, 1990. Testimony also showed that the fire erupted sometime around midnight, approximately nine hours after completion of the welding by Hamilton. During the interval between the welding and the fire no one from the boatyard checked the welding area for smoldering fires. Xynides has the burden of showing, through expert testimony or otherwise, that a fire watch who was posted for a reasonable period of time would likely have failed to detect the fire hazard present on board the Lady Jane. Based on the

Court's evaluation of the evidence, no such showing has been made to raise sufficient doubts about the rebuttable presumption of negligent breach of contract. In addition, the Court has found that Hamilton failed to act prudently in pouring a mere bucket of water over the welding area. Therefore, the Court finds that Xynides Boat Yard negligently breached its duties under the bailment contract, and that such breach was the legal cause of Petitioners' damages.

■ In addition, based on these same factual findings, the Court finds in favor of Petitioners on their other claims of breach of contract and negligence, because Xynides Boat Yard failed to perform its contractual duties in a workmanlike manner and with due care. Xynides Boat Yard's failure to post a fire watch and failure to use other preventative measures enabled the smoldering fire to go undetected, which in turn caused extensive damage to Petitioners' ship, the Lady Jane.

Accordingly, it is now

ORDERED AND ADJUDGED:

1. On the claim asserted by Xynides Boat Yard, Inc., the Court finds for Petitioners Steen and Lady Jane, Inc. and against Claimant Xynides Boat Yard, Inc. The petition of Jane Steen and Lady Jane, Inc. for exoneration from liability is granted.

2. On the counterclaim asserted by Petitioners Steen and Lady Jane, Inc. against Xynides Boat Yard, Inc., the Court finds for Petitioners Steen and Lady Jane, Inc. and against Xynides Boat Yard, Inc.

3. On the counterclaim asserted by Petitioners against Nicholas and Harry Xynides, the Court finds for Nicholas and Harry Xynides and against Petitioners.

4. Petitioners are directed to file a brief addressing the issue of damages within twenty days. Claimant shall respond within ten days of service of Petitioners' brief.

**DONE AND ORDERED.**