**In the Matter of the Complaint of OSWEGO BARGE CORPORATION, Plaintiff as Bare Boat Chartered Owner of the Tug "EILEEN C" and Owner of the Barge "NEPCO 140", for Exoneration from or Limitation of Liability.**

No. 76–CV–269.

United States District Court,
N. D. New York.

June 1, 1977.

On Motion for Leave to Amend
Complaint June 28, 1977.

Paul V. French, U.S. Atty., N.D.N.Y., Gustave J. DiBianco, Syracuse, N.Y., of counsel, for United States of America.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Olin Harper LeCompte, Albany, N.Y., of counsel, for the State of New York.

Healy & Baillie, New York City, and Kernan & Kernan, Utica, N.Y., for Oswego Barge Corp.; Nicholas J. Healy, Allan A. Baillie, John C. Koster and John D. Kimball, New York City, and Leighton R. Burns, Utica, N.Y., of counsel.

O'Hara, O'Hara & Vars, George H. Lowe, Liverpool, N.Y., of counsel, for some claimants.

Wilbur E. Dow, Jr., New York City, for some claimants.

## MEMORANDUM–DECISION AND ORDER

MUNSON, District Judge.

This is an Admiralty proceeding arising out of a barge grounding and subsequent oil spill which occurred in June of 1976 along the St. Lawrence Seaway. Following the spill, the barge owner filed with this Court a petition for exoneration from or Limitation of Liability, pursuant to 46 U.S.C. § 183 and Admiralty and Maritime Supplemental Rule F. Judge Port then ordered that all potential claimants submit their claims by December 31, 1976, and enjoined any and all other actions resulting from the incident in issue. New York State, a claimant with respect to the oil spillage, seeks to have the Order of Judge Port relaxed so to allow it to prosecute three of its five claims in another proceeding, without being subject to any limitation with respect to recovery.

The State maintains that it has five separate and distinct claims as a result of the accident in issue. The first three, which are the subject of this motion, all arise under sections of the New York Environmental Conservation Law which provide for strict liability in cases of, respectively, oil spills, water pollution in general, and endangerment of protected waterfowl by oil spills. New York Environmental Conservation Law §§ 71–1941, 17–0501, 71–0925(5), and 11–0505(1) (McKinney's 1973).[1] The re-

---

1. Claim 1: Penalties and liability for spills of bulk liquids

 1. Except where the owner of or a person in actual or constructive possession or control of one thousand gallons or more, in bulk, of any liquid which, if released, would or would be likely to pollute the waters of the state can prove that the entry of presence of any part of such liquid into or in such waters causing or contributing to a condition therein in contravention of the standards adopted or deemed adopted by the water pollution control board or any of its legal successors was caused solely by (A) an act of God, (B) an act of war, (C) negligence on the part of the United States or New York State Govern-

maining two claims, which are not involved in the State's motion, involve public nuisance and negligence ·and trespass, causing injury to State lands.

## I. LIMITATION OF LIABILITY

The Limitation of Liability provision now in issue provides, in relevant part:

(a) The liability of the owner of any vessel, whether American or foreign, for any embezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending. 46 U.S.C. § 183.

The applicability of the federal Limitation of Liability provision, 46 U.S.C. § 183, to strict liability statutes enacted by the various states in response to the increasingly serious problem of oil spills in navigable waters has been considered in only one case

ment or (D) an act or omission of a third party without regard to whether any such act or omission was or was not negligent, or any combination of the foregoing clauses, such owner or person shall be liable for a penalty of not more than two thousand five hundred dollars for an initial incident resulting in or contributing to such a contravention and for an additional penalty not to exceed five hundred dollars for each day during which such contravention or contribution thereto continues, and in addition shall be liable to the people of the state of New York for the actual costs incurred by or on behalf of the people of the state for the removal or neutralization of such liquid and for any and all reasonable measures taken or attempted to reduce, limit or diminish the extent or effect or [*sic*] such contravention. Environmental Conservation Law § 71–1941(1).

Claim 2: General prohibition against pollution

1. It shall be unlawful for any person, directly or indirectly, to throw, drain, run or otherwise discharge into such waters organic or inorganic matter that shall cause or contribute to a condition in contravention of the standards adopted by the department pursuant to section 17–0301. Environmental Conservation Law § 17–0501.

Violations; civil liability

1. A person who violates any of the provisions of, or who fails to perform any duty imposed by titles 1 through 11 inclusive and title 19 of article 17, or who violates a condition of a permit heretofore or hereafter issued pursuant to title 7 of article 17 or subdivision 4 of section 17–0701, or who violates a determination or order of the department or of the commissioner, promulgated pursuant to titles 1 through 11 inclusive and title 19 of article 17 shall be liable to a penalty of not to exceed ten thousand dollars per day of such violation, and, in addition thereto, such person may be enjoined from continuing such violation as hereinafter provided. Violation of a permit condition shall constitute grounds for revocation of such permit, which revocation may be accomplished either as provided in paragraph f of subdivision 4 of section 17–0303 or by order of judgment of the supreme court as an alternate or additional civil penalty in an action brought pursuant to subdivision 3 of this section. Environmental Conservation Law § 71–1929(1).

Claim 3: Polluting streams prohibited

1. No dyestuffs, coal tar, refuse from a gas house, cheese factory, creamery, condensary or canning factory, sawdust, shavings, tan bark, lime, acid, oil or other deleterious or poisonous substance shall be thrown or allowed to run into any waters, either private or public, in quantities injurious to fish life, protected wildlife or waterfowl inhabiting those waters or injurious to the propagation of fish, protected wildlife or waterfowl therein. Environmental Conservation Law § 11–0503.

Civil penalties

The penalties referred to in section 71–0919, to which a person is liable upon violation of provisions of the Fish and Wildlife Law or any order, rule or regulation of the department, shall be:

1. Unless another penalty is specifically provided for in this subdivision or elsewhere in the Fish and Wildlife Law, sixty dollars and an additional penalty of twenty-five dollars for each fish, bird or animal or part thereof, other than shellfish or crustacea, involved in the violation; an additional penalty of five dollars for each bushel of shellfish or each crustacean or part thereof, except lobster, involved in the violation and an additional penalty of twenty-five dollars for each lobster involved in the violation; . . .

5. If the violation was any act prohibited by subdivision 1 of section 11–0503, not less than five hundred dollars nor more than one thousand dollars for each offense and an additional penalty of ten dollars for each fish killed in violation thereof; . . . Environmental Conservation Law § 71–0925.

to date. See *Complaint of Harbor Towing Corporation*, 335 F.Supp. 1150 (D.Md.1971); see also *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 332, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), reh. den. 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162, wherein the Supreme Court (Douglas, J.) expressly declined to rule upon the issue. In *Harbor Towing*, the Maryland District Court held that 46 U.S.C. § 183 did apply to limit claims brought under state strict liability provisions which were virtually identical to the New York statutes now in issue.[2] The court found a conflict to exist between the state statute, purporting to impose liability upon an owner without knowledge or privity, and 46 U.S.C. § 183, which expressly limits such an innocent owner's liability. The conflict, the court held, must be resolved in favor of the federal statute, by virtue of the Supremacy Clause. This result is consistent with one case wherein a federal court sitting in New York held that no state statute could impair or qualify the Limitation of Liability, which applies to both maritime and non-maritime torts. *In re Highland Navigation Corporation*, 24 F.2d 582 (S.D.N.Y.1927), aff'd 29 F.2d 37 (2d Cir. 1928).

The State has conceded the fact that, were there a conflict between the New York Environmental Law provisions and the federal Limitation of Liability statute, the state provisions would necessarily yield to the extent of the conflict. In this respect, however, the State claims this case is distinguishable from *Harbor Towing*. Relying upon two recent cases, *United States v. Ohio Valley Company, Inc.*, 510 F.2d 1184 (7th Cir. 1975); *Hines, Inc. v. United States*, 551 F.2d 717 (6th Cir. 1977), the State argues that the Limitation of Liability provision, 46 U.S.C. § 183, has no applicability to strict or absolute liability statutes, inasmuch as the "triggering" language of that provision is "privity or knowledge", which necessarily implies the presence of fault or negligence.

The *Ohio Valley Company* and *Hines, Inc.* cases involved claims brought under a *federal* strict liability statute prohibiting damaging or impairment of wharfs, piers, and the like, situated on navigable waterways. 33 U.S.C. § 408.[3] The opinions in both cases make it clear that the basis for refusing to apply the limitation of 46 U.S.C. § 183 to liability found under 33 U.S.C. § 408 is the principle of statutory interpretation which requires that two Congressional provisions,

**2.** The Maryland provisions in issue in the *Harbor Towing* case were synopsized therein by the Maryland District Court as follows:

Article 96A, § 29 of the Maryland Code clearly makes it a criminal offense to discharge oil into Maryland waters. Section 29B of the same article provides the State with a civil remedy to recover the costs of clean-up expenses:

The Maryland Port Authority and the Department of Natural Resources shall charge and collect a compensatory fee from the person responsible for the oil spillage. This fee shall cover the cost of labor, equipment operation, and materials necessary to eliminate the residue of oil spillage and shall be retained by the agency charging the fee.

Section 29D of that same article empowers the Department of Natural Resources "to require the repair of any damage done and the restoration of water resources," including mortality to fish and other aquatic life. *Complaint of Harbor Towing Corporation, supra* at 1152.

**3.** Taking possession of, use of, or injury to harbor or river improvements

It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: *Provided,* That the Secretary of the Army may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judgment such occupation or use will not be injurious to the public interest. 33 U.S.C. § 408.

neither of which refer to the other, be construed, if possible, so as to avoid any conflict.[4] Recognizing the strong federal policy considerations behind 33 U.S.C. § 408, enacted long after the Limitation of Liability statute, the courts in *Hines* and *Ohio Valley* had strong doubts that Congress intended that provision to be subservient to the Limitation of Liability. As stated by the Sixth Circuit Court of Appeals in *Hines* :

> We believe that the plain purposes of the Rivers and Harbors Act which we construe here cannot be served by subordinating it to the Limitation of Liability Act which Congress adopted in 1851 and that Congress did not intend the subordination to that Act which appellant now seeks. As a consequence, we hold that the statute later in time (The Rivers and Harbors Act) served to amend the unlimited language of the 1851 Limitation of Liability Act.

*Hines, Inc. v. United States, supra* at 718. See also *Wyandotte Transportation Co. v. United States*, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), and *In re Chinese Maritime Trust, Ltd.*, 478 F.2d 1357 (2d Cir. 1973), cert. den. 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974), applying the same rationale to find that claims under the Wreck Statute of the Rivers and Harbors Act of 1899, 33 U.S.C. § 409,[5] are not subject to limitation of liability. Similar considerations were expressed by the Seventh Circuit Court of Appeals in *Ohio Valley. United States v. Ohio Valley Company, Inc., supra* at 1187–1189.

Were the statutory interpretation principles, referred to above, the sole rationale behind the decisions in *Ohio Valley* and *Hines*, this matter would be easily settled based upon the Supremacy Clause reasoning relied upon by the Court in *Harbor Towing*. It is clear that the opinions in *Hines* and *Ohio Valley* heavily rely upon the statutory interpretation grounds cited above. However, there is language in both decisions to support the State's contention that both cases stand for the proposition that the Limitation of Liability provision was not intended to apply to claims brought under provisions imposing strict liability upon vessel owners. The Court in *Hines*, citing *Ohio Valley*, stated that to apply the Limitation of Liability provision to restrict recovery under the Rivers and Harbors Act

---

4. Interestingly enough, it is arguable that the *Ohio Valley* case is completely reconcilable with application of the limitation provisions. In that case, the vessel owner substituted a surety bond in the amount of $80,623.27 in lieu of seizure of the vessel, which had an appraised value of $35,300.00 (including pending freight). This procedure is in fact authorized in cases arising under 46 U.S.C. § 183 as an alternative to surrendering the vessel. See Admiralty and Maritime Supplemental Rule F(1). The Court clearly considered *Ohio Valley* as an action *in rem*, with the bond as the substituted res. The Court expressly declined to decide, however, whether the amount of the bond could be viewed as the applicable limitation, and the action as one *in personam*, as required under 46 U.S.C. § 183, for limitation purposes. *United States v. Ohio Valley Company, Inc., supra* at fn. 10, pp. 1189–1190. This, of course, would have obviated the need to decide whether the limitation applied to 33 U.S.C. § 408, yet would not have changed the outcome of the case.

5. Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels

It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit to cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title. 33 U.S.C. § 409.

would violate the absolute liability language of 33 U.S.C. § 408. As the Court in *Ohio Valley* stated:

> That phrase ["privity and knowledge"] implies that the owner be unaware of the fault in his vessel that caused an accident. Since the triggering mechanism for section 183(a) limitation of liability is tied to an awareness of negligence, and because negligence is not significant in actions under sections 14 and 16 [33 U.S.C. §§ 408 and 412], it follows that the limitation of liability provisions are inapplicable to those sections.

*United States v. Ohio Valley Company, Inc., supra* at 1188.

■ With all due respect to the learned judges of the Sixth and Seventh Circuits Courts of Appeals, this Court believes that Congress, in enacting the Limitation of Liability statute, never intended the loophole relied upon by those courts in *Hines* and *Ohio Valley*. The original limitation provision (the forerunner to 46 U.S.C. § 183(a)) was enacted by Congress in 1851 to foster American shipping as a competitive force to that of Great Britain and other foreign powers. *Lake Tankers Corporation v. Henn*, 354 U.S. 147, 77 S.Ct. 1269, 1 L.Ed.2d 1246 (1957). That provision, admittedly in derogation of common law principles, was based in general upon the French Ordinance of 1681 (which eventually was carried into many other civil law jurisdictions), a limitation act of England of 1734, 7 Geo. 2, C.15, and subsequent modifying provisions, and similar statutes already in force in Maine and Massachusetts. 3 Benedict on Admiralty § 4 (7th Ed. Revised). In 1884, Congress amended the statute to include all claims except those for seamen's wages. *Id.* at § 5; *Richardson v. Harmon*, 222 U.S. 96, 32 S.Ct. 27, 56 L.Ed. 110 (1911). As stated by the Supreme Court in *Richardson*:

> We therefore conclude that the section in question [act of June 26, 1884, 23 Stat. at Large, pp. 53–57] was intended to add to the enumerated claims of the old law "any and all debts and liabilities" not theretofore included.

> \* \* \* \* \* \*

Thus construed, the section harmonizes with the policy of limiting the owner's risk to his interest in the ship in respect of *all claims* arising out of the conduct of the master and crew, whether the liability be strictly maritime or from a tort non-maritime, but leaves him liable for his own fault, neglect and contracts.

*Richardson v. Harmon, supra* at 105–106, 32 S.Ct. at 30 (Emphasis supplied). This Court therefore finds that Congress did not intend that claims brought under statutes of strict liability be excepted from limitation of liability.

■ This Court is not persuaded by the hypertechnical analysis engaged in by the Courts in *Hines* and *Ohio Valley* whereby use of the language "privity or knowledge" in the statute is said to implicitly exclude absolute liability from its coverage. It must be remembered that statutes of strict liability were virtually unknown in 1851 and 1884, when the relevant provisions were enacted. The use of the terms "privity" and "knowledge" in the statute was to insure that a vessel owner who in some way contributed to the loss, or had knowledge of facts which could have been acted upon to prevent the loss, could not limit his liability. 3 Benedict on Admiralty § 41; see also Black's Law Dictionary p. 1362 (4th Ed. 1968). Thus it is said that without negligence there can be no knowledge or privity, so that the owner cannot be held liable. *The Spare Time II*, 36 F.Supp. 642 (E.D.N. Y.1941); 3 Benedict on Admiralty § 41.

Reliance upon cases refusing to apply the Limitation of Liability provision to the Wreck Statute, 33 U.S.C. § 409, is equally unpersuasive to this Court. Those cases, relied upon by analogy by the Court in *Ohio Valley*, clearly fall outside the scope of 46 U.S.C. § 183, inasmuch as the acts involved therein, by their very nature, involved privity or knowledge on the part of the vessel owners. This was in fact the holding of each of those cases. See also *In re Pacific Far East Line, Inc.*, 314 F.Supp. 1339 (N.D. Cal.1970) aff'd 472 F.2d 1382 (9th Cir. 1973). In this respect, I believe that the Court in

*Ohio Valley* improperly analogized those cases with that before it, which did not involve privity or knowledge of the owner. See *Complaint of Harbor Towing Corporation, supra* at 1153–1154.

One somewhat related argument not relied upon by the State, but nevertheless worthy of mention, is to the effect that to apply the limitation to a statute such as that at bar, which on its face purports to be quasi-criminal, would contravene public policy. cf. *The Snug Harbor*, 53 F.2d 407 (E.D.N.Y.1931). That argument should be rejected, as it was in *Harbor Towing* because the essence of the state statutes in issue is remedial, rather than criminal. In any event, the result urged is clearly prohibited by the Supremacy Clause. *Complaint of Harbor Towing Corporation, supra* at 1154–1155.

The petitioner, in support of its argument, contends that the Limitation of Liability provision is an anachronism in an age of corporate shields and insurance policies. As such, the State argues, the provision should be repealed by Congress, and until such time should be narrowly construed by the courts. This argument was expressly rejected in *Pettus v. Jones & Laughlin Steel Corporation*, 322 F.Supp. 1078 (W.D.Pa. 1971). While the Court in *Pettus* did agree that the statute was anachronistic, it noted that Congress in fact re-evaluated the provision in 1935, long after the advent of insurance and corporations, and saw fit to leave it untouched. Moreover, in making the argument, the petitioner overlooks a very important policy consideration of 46 U.S.C. § 183, that of consolidating all claims arising out of a maritime disaster and trying them together in one forum, thereby assuring equitable sharing by claimants in what is often a limited source of recovery. This theory, the so-called "concursus" or "concourse" theory, is even today a strong consideration, especially in cases where there are multiple claimants and an insufficient fund, as in the case at bar. *Lake Tankers Corporation v. Henn, supra.* Thus, contrary to what the petitioner would have us believe, the Second Circuit Court of Appeals has consistently recognized the "con-

course" as the only viable means of marshalling funds and making a *pro rata* distribution where the claims exceed in amount the fund. *Petition of Trinidad Corporation*, 229 F.2d 423 (2d Cir. 1955); *Pershing Auto Rentals, Inc. v. Gaffney*, 279 F.2d 546 (5th Cir. 1960). Recognizing this as the very purpose of the liability limitation provision, the Court of Appeals for the Third Circuit has stated:

> The exclusive jurisdiction of an admiralty court in a multiple claims-inadequate-fund limitation proceeding is of such dimension that an Admiralty court cannot grant permission to a claimant to establish his claim in another tribunal (citing *Pershing, supra. In re Central Railroad Company of New Jersey*, 469 F.2d 857, 862 (3d Cir. 1972), cert. den. 411 U.S. 938, 93 S.Ct. 1900, 36 L.Ed.2d 399 (1973).

The petitioner has set forth several cases allegedly decided adversely to shipowners under the Limitation of Liability provision, thereby indicating a trend of narrowing or altogether ignoring 46 U.S.C. § 183. Petitioner's Memorandum of March 15, 1977 at p. 16. None of those cases, however, in any way cast doubt upon the validity or applicability of that section in multiple claim-insufficient fund cases. In *Olympic Towing Corporation v. Nebel Towing Corporation*, 419 F.2d 230 (5th Cir. 1969), cert. den. 397 U.S. 989, 90 S.Ct. 1120, 25 L.Ed.2d 396 (1970), the court held that the limitation would apply to shield a shipowner, but would not extend to shield his insurer. Even this relatively moderate position was established only over a strong dissent. *States Steamship Company v. United States*, 259 F.2d 458 (9th Cir. 1957) mod. 56 M.C. 1810, and *Petition of Republic France*, 171 F.Supp. 497 (S.D.Tex.1959), rev'd 290 F.2d 395 (5th Cir. 1969), both also cited by the petitioner, merely held *on the facts* therein that the shipowners involved had privity or knowledge, and as such were not protected by 46 U.S.C. § 183. Similarly, the Second Circuit in *In re Petition of the Dodge, Inc.*, 282 F.2d 86 (2d Cir. 1960), when referring to an ambiguity in the provision, was merely referring to whether the

vessel in issue was a tanker or a tank vessel, for purposes of 46 U.S.C. § 183(f). None of these cases in any way cast doubt upon the validity of the limitation provision itself, or its applicability herein.

In weighing the merits of this motion, this Court is not unmindful of the growing concern over oil spills and their devastating effects upon the environment. The courts of this and other circuits recognize a concomitant policy of fostering state attempts to clean up oil spills and recoup their costs for such efforts. See *In re Chinese Maritime Trust, Ltd., supra.* Similarly, this Court is aware of increasingly expressed doubts of the continued need for the protection afforded to shipowners by the Limitation of Liability provision.[6] However, this Court refuses to grasp at straws in order to find non-existent loopholes and thereby avoid its applicability. The proper forum for reform of the type sought is Congress, and not in the courts. The State's motion to have its environmental claims exempted from the application of the Limitation of Liability of 46 U.S.C. § 183 is therefore denied.

## II. SEPARATE FORUM

■ In Point II of its memorandum, the petitioner requests leave to prosecute its Environmental Conservation claims independently of this action, even if the Court should find the limitation of 46 U.S.C. § 183 applicable to those claims. While the petitioner intimates that this would be a unique situation, the fact is that it is expressly provided for in 46 U.S.C. § 184, and has been often resorted to in past cases. See, e. g., *Lake Tankers Corporation v. Henn, supra; Petition of Trinidad Corporation, supra; Petition of Red Star Barge Line,* 160 F.2d 436 (2d Cir. 1947). The only caveat noted in those and similar cases is that the petitioning claimant should first stipulate to recognizing the District Court, acting in Admiralty, as the only forum in which the limitation issue can properly be litigated,

and by agreeing that if that court does find that the limitation does in fact apply, then any judgment awarded in a separate action should be reduced accordingly to the *pro rata* share to which he would be entitled under 46 U.S.C. §§ 183(b) and 184. *Id.* If the petitioner is willing to so stipulate, there is no reason to deny it the right to bring action on its claims in an independent proceeding.

## III. PLAINTIFF'S CROSS MOTION

The plaintiff has prayed for a dismissal of, or in the alternative summary judgment upon, State claims numbered one (New York Environmental Conservation Law § 71–1941) and four (public nuisance). In support of its motion relative to the first claim, plaintiff contends that Environmental Conservation Law § 71–1941 is in conflict with federal provisions, and in particular with 33 U.S.C. § 1321, and is therefore preempted, at least to the extent of the conflict. Insofar as the public nuisance claim is concerned, plaintiff contends that recovery under this theory would also conflict with federal law, and in any event, a common law cause of action for public nuisance has not been demonstrated in the Complaint.

### A. STATE'S FIRST CLAIM

The State urges that this Court abstain from considering the Constitutional validity of Environmental Conservation Law § 71–1941, maintaining that the section lends itself to several possible interpretations, one of which would allegedly be compatible with the applicable federal provisions.

■ The State is correct in stating that a federal court should, under most circumstances, abstain from ruling upon the validity of a state statute when it is susceptible of a constitutional construction, and it has not as yet been passed upon by the state courts. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); *Shelton v. Smith,* 547 F.2d

---

**6.** It should be noted, however, that even the present federal oil spill liability provision, enacted in 1970 and amended in 1972, contains a limitation of liability of $100 per gross ton, or $14,000,000, whichever is less. 33 U.S.C. § 1321(f)(1).

768 (2d Cir. 1976); see also C. Wright, Law of Federal Courts § 52 (3d Ed. 1976). Concomitantly, when a statute is capable of different interpretations, a federal court is not empowered to prefer one, even though to do so would obviate any constitutional conflict. *United States v. Thirty-Seven Photographs*, 402 U.S. 363, 91 S.Ct. 1400, 28 L.Ed.2d 822 (1971), reh. den. 403 U.S. 924, 91 S.Ct. 2221, 29 L.Ed.2d 702 (1971); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

■ The primary area of potential for conflict between the state and federal provisions relates to liability for costs of removal or neutralization of the spilled oil. More specifically, the alleged conflict centers around the phrase "costs incurred *by or on behalf of* the people of the state", and whether that applies to the costs (approximately nine million dollars) incurred by the United States Coast Guard in removing the oil. The State claims that the phrase is susceptible of three possible interpretations: 1) the costs referred to in the phrase are those incurred by the State, its agents, or contractors working under its authority; 2) the phrase includes costs incurred by the Coast Guard, but only up to the limits imposed in 33 U.S.C. § 1321(f) (this would be a strained reading); 3) the phrase allows unlimited recovery of costs incurred by the State and all others, including the Coast Guard, on its behalf. Petitioner's Memorandum of April 29, 1977, at p. 8. The State urges that it is the latter interpretation which will ultimately be vindicated by the courts of New York. Yet in doing so, the State is attempting to have the best of two worlds. It is obvious that under the first interpretation, which the State claims would not result in a conflict,[7] it could not recover the nine million dollars expended by the Coast Guard in its clean-up operations.

The remaining two suggested interpretations bring the state provision into direct conflict with the federal provision, insofar as it goes beyond merely allowing State recovery for damages and *its* clean-up costs, as was approved by the Supreme Court in *Askew v. American Waterways Operators, Inc.*, 411 U.S. 325, 93 S.Ct. 1590, 36 L.Ed.2d 280 (1973), reh. den. 412 U.S. 933, 93 S.Ct. 2746, 37 L.Ed.2d 162 (1973); see also 3 Benedict on Admiralty §§ 111–113 (7th Ed. Rev.), and purports it to provide for state recoupment of Coast Guard clean-up costs.[8] cf. *Jones v. Rath Packing Co.*, 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604; see also *British Airways Board v. Port Authority of New York and New Jersey*, 431. F.Supp. 1216 (S.D.N.Y.1977).

Since it is therefore clear that, under any of the suggested interpretations of Environmental Conservation Law § 71–1941, the State may not recover the cost of Coast Guard clean-up operations, this Court need not abstain from ruling upon the issues. *Harris County Commissioners Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). This Court finds that the plaintiff is entitled to a summary judgment upon the State's first claim to the extent that it relates to costs incurred by the Coast Guard or other federal agencies in their oil clean-up operations.

## B. STATE'S FOURTH CLAIM

The State's fourth claim in this case is presented on behalf of its citizens in its capacity as *parens patriae*. In it, the State seeks to recover the costs of removing the oil as those incurred in abating a public nuisance.

■ It is said that Congress, in enacting the Federal Water Pollution Control Act of 1972, did not envision that provision as a

---

7. This court does not decide the question of whether or not there would be a conflict even under this interpretation. It is arguable that even this construction would not obviate the conflict with the federal provision, inasmuch as the statute would seemingly authorize direct recovery by the State from the vessel owner of its costs incurred, whereas the federal plan seemingly calls for payment to the State out of

the subdivision (k) fund, with subrogation to the federal government of the State's claim. 33 U.S.C. § 1321(c, d, f, and k).

8. The federal government has, in fact, made such a claim in this case, as the plaintiff points out in its memorandum. Plaintiff's Memorandum at fn. *, p. 50.

substitute for common law notions of public nuisance; that is, it was never intended to provide an exclusive remedy in cases of oil spills. *United States v. Ira S. Bushey & Sons, Inc.*, 363 F.Supp. 110 (D.Vt.1973), aff'd 487 F.2d 1393 (2d Cir. 1973), cert. den. 417 U.S. 976, 94 S.Ct. 3182, 41 L.Ed.2d 1146 (1974); *United States ex rel. Scott v. United States Steel Corporation*, 356 F.Supp. 556 (N.D.Ill.E.D.1973). Accordingly, in the case of an oil spill, a state may maintain an action for abatement of a public nuisance. *State of Maine v. M/V Tamano*, 357 F.Supp. 1097 (D.Me., S.D.1973); *United States ex rel. Scott v. United States Steel Corporation, supra.*

 In determining this facet of the plaintiff's cross motion, this Court finds that, because impairment of a navigable waterway is involved, federal common law principles of public nuisance, rather than state law, should govern.[9] *Illinois v. City of Milwaukee*, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972). It is true, as the plaintiff argues, that under federal common law notions, a public nuisance is by nature continuous or recurring. *State of Maryland, Dept. of N. Res. v. Amerada Hess Corp.*, 350 F.Supp. 1060 (D.Md.1972). However, this Court is not prepared to hold that, as a matter of law, the situation herein which had an effect upon the St. Lawrence Seaway for some 122 days, was not continuous or recurring. cf. *Shamrock Towing Company v. Schiavone-Bonomo Corporation*, 275 F.2d 338 (2d Cir. 1960). Moreover, it has been held on at least one occasion that even a single isolated instance which was foreseeable and preventable can constitute a nuisance. *E. Rauh & Sons Fertilizer Co. v. Shreffler*, 139 F.2d 38 (6th Cir. 1943). It cannot be said with absolute certainty that a jury could not find all or some of the oil spillage in issue to have been foreseeable and preventable. The motion to dismiss the State's fourth claim for failure to state a cause of action upon which relief could be granted is therefore hereby denied.

There is merit, however, in plaintiff's argument that to allow the State to recover federal clean-up expenses under its claim for abatement of a public nuisance would conflict with the Federal Water Pollution Control Act, and in particular, 33 U.S.C. § 1321. This Court has already stated its opinion that to allow such a recovery by the State would violate the Supremacy Clause of the Constitution. The plaintiff is therefore entitled to a partial summary judgment on the State's fourth claim, insofar as that claim relates to clean-up costs incurred by agencies of the federal government.

## IV. SUMMARY

In accordance with the foregoing opinion, this Court makes the following rulings with respect to the various pending motions:

1. The State's motion for an order exempting its Environment Conservation Law claims from the Limitation of Liability provision, 46 U.S.C. § 183, is denied.

2. The State will be allowed to prosecute its claims in a separate forum, providing it stipulates that this Court has sole jurisdiction to determine the applicability of the limitation provision, and that if it is held to apply, any recovery by the State should be reduced to its *pro rata* share under 46 U.S.C. §§ 183(b) & 184.

3. The plaintiff's cross motion for summary judgment on the State's claims one and four is granted to the extent that those claims seek recovery for expenses incurred by agencies of the federal government.

It is hereby so ordered.

## ON MOTION FOR LEAVE TO AMEND COMPLAINT

The complainant, Oswego Barge Corporation, has moved, pursuant to F.R.C.P. Rule 15(a), for leave to amend its Complaint in the interests of justice. As it now stands, the complainant disputes any liability in the matter and alternatively prays for limitation of liability to the value of the tug,

**9.** There does not appear to be any substantial differences between these federal common law principles and the New York law of common nuisance (non-criminal). Compare, e. g., 66

C.J.S. Nuisances § 18, and *United States v. Ira S. Bushey & Sons, Inc., supra*, with 42 N.Y.Jur. Nuisances § 18.

"EILEEN C", the barge, "NEPCO 140", and the freight pending. By way of the proposed amendment, the complainant seeks to place in issue the question of whether the barge, the tug, or both should constitute the "vessel" within the meaning of 46 U.S.C. § 183, and consequently should figure into the make-up of the limitation fund.

The spirit of Rule 15(a) dictates that motions to amend complaints be liberally granted, absent a good reason to the contrary, so that disputes may be resolved upon the merits, rather than on the basis of procedural technicalities. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); 6 Wright & Miller, Federal Practice and Procedure §§ 1471 *et seq.*; 3 Moore's Federal Practice § 15.08. Among the reasons most often cited for denying such a motion are: 1) undue prejudice to other parties as a result of the amendment; 2) undue delay caused by it; 3) bad faith on the part of the movant, either in bringing the motion or in its timing; and 4) sufficient prior notice of, and opportunity to correct or clarify the Complaint, and a failure to do so. *Foman v. Davis, supra.* None of these factors is present in the case at bar. The prejudice alleged by the various claimants opposing this motion will result not from the mere fact of the amendment, but from its substance. In this respect, the case is not unlike one in which the Complaint was being amended to state additional claims, or to increase the amount sought, both of which are proper functions or an amendment under Rule 15(a). 3 Moore's Federal Practice § 15.08.

The claimants are quite correct in asserting that the motion to amend should be denied if it appears that the claim, as amended, could not withstand a motion to dismiss brought under F.R.C.P. Rule 12. 3 Moore's Federal Practice § 15.08. This Court is of the opinion, however, that such a motion, when addressed to the Complaint as amended, would fail. *Liverpool, Brazil & River Plate Stream Navigation Company v. Brooklyn Eastern District Terminal*, 251 U.S. 48, 40 S.Ct. 66, 64 L.Ed. 130 (1919); 3 Benedict on Admiralty § 54. The *Liverpool* opinion, authored by Mr. Justice Holmes,

clearly indicates that in cases of tort, as opposed to those involving contracts for the carriage of goods, or those in which some duty was owed by the vessel owner to the claimant, the vessels which must be surrendered under 46 U.S.C. § 183 are those sharing in some way in the fault for the incident in issue. While that case has been described as a "great judge's momentary aberration", Gilmore & Black, The Law of Admiralty p. 918 (2d Ed. 1975), it is in fact consistent with several prior cases from within the Second Circuit, none of which is referred to by any of the complainants herein. *The Transfer No. 21*, 248 F. 459 (2d Cir. 1917); *The W. G. Mason*, 142 F. 913 (2d Cir. 1905); *Van Eyken v. Erie R. Co.*, 117 F. 712 (E.D.N.Y.1902); see also *The Erie Lighter*, 250 F. 490 (D.N.J.1918). Moreover, the *Liverpool* case was followed by the Second Circuit as recently as 1958. *Deep Sea Tankers v. The Long Branch*, 258 F.2d 757 (2d Cir. 1958), cert. den. 358 U.S. 933, 934, 79 S.Ct. 316, 3 L.Ed.2d 305 (1959), reh. den. 359 U.S. 921, 79 S.Ct. 578, 3 L.Ed.2d 583 (1959). None of the cases cited by the various complainants are to the contrary, inasmuch as they involve either: 1) contracts for the carriage of goods, *Sacramento Nav. Co. v. Salz*, 273 U.S. 326, 47 S.Ct. 368, 71 L.Ed. 663 (1927); *The Cleveco*, 59 F.Supp. 71 (N.D.Ohio, E.D.1944), aff'd 154 F.2d 605 (6th Cir. 1946), mod. on other gds. 169 F.2d 622 (6th Cir. 1948); *The Columbia*, 73 F. 226 (9th Cir. 1896), app. dism. 179 U.S. 55, 21 S.Ct. 28, 45 L.Ed. 82 (1900); 2) findings of some degree of fault shared by the various vessels, *In re Brown & Root Marine Operators, Inc.*, 267 F.Supp. 588 (S.D.Tex. 1965), aff'd. 377 F.2d 724 (5th Cir. 1967); *The Bordentown*, 40 F. 682 (S.D.N.Y.1889); or 3) injury to persons enjoying a master-servant relationship with the vessel owners, *In re Drill Barge No. 2*, 454 F.2d 408 (5th Cir. 1972), cert. den. 406 U.S. 906, 92 S.Ct. 1610, 31 L.Ed.2d 816 (1972); *Standard Dredging Co. v. Kristiansen*, 67 F.2d 548 (2d Cir. 1933), cert. den. 290 U.S. 704, 54 S.Ct. 372, 78 L.Ed. 605 (1934); *In re United States Dredging Corp.*, 264 F.2d 339 (2d Cir. 1959), and are therefore distinguishable from both *Liverpool* and the present case. What is more, while the claimants assert

**324**

that the *Liverpool* doctrine has been distinguished away, and is no longer valid, the applicability of *Liverpool* to collision cases was reaffirmed as recently as 1968, when one District Court ordered a tug surrendered under 46 U.S.C. § 183, but refused to order the surrender of the undamaged barges which were in tow behind the tug at the time of the collision, citing *Liverpool* on that score. *In re Midland Enterprises, Inc.*, 296 F.Supp. 1356 (S.D.Ohio, W.D.1968). This Court therefore finds that a motion for dismissal aimed at the Complaint, as amended, would fail, there being necessary questions of fact, pertaining to the relative fault of the various vessels, which must be resolved prior to determining the amount of the limitation fund.

The Court is of the opinion that the interests of justice would best be served by granting the complainant's motion to amend its Complaint. F.R.C.P. Rule 15(a). The motion is therefore granted, and the complainant, Oswego Barge Corporation, is directed to file an amended Complaint and serve it upon all parties within twenty (20) days of the date of this Order.

It is so ordered.